HARVARD LAW SCHOOL LIBRARY

## HINSON vs. LOTT.

[BILL IN EQUITY TO ENJOIN COLLECTION OF STATE AND COUNTY TAX ON IMPORTED LIQUORS.]

1. *Constitutionality of State law taxing imported liquors.*—The State has no right to impose a tax for revenue on liquors imported from foreign countries, so long as they remain in the hands of the importer, and in the original casks or barrels in which they were imported; but the restriction on the State's right to tax ceases, when such liquors pass out of the hands of the importer, or when the original casks are broken by him; and it does not extend to liquors brought here from other States of the Union. (BYRD, J., *dissenting* as to the last proposition.)

2. *County tax on imported liquors.*—Since the 73d section of the revenue law, approved February 22, 1866, authorizes the assessment of a tax for county purposes on the amount "shown by the assessment books," and the tax on imported liquors is not entered on "the assessment books", the commissioners' court has no authority to levy a county tax on such imported liquors.

APPEAL from the Chancery Court at Mobile.
Heard before the Hon. N. W. COOKE.

THE bill in this case was filed, on the 2d May, 1866, by John W. Hinson, against E. B. Lott, who was the tax-collector of Mobile; and sought to enjoin and restrain the collection of the State and county tax on the plaintiff's imported liquors, which he had imported from foreign countries, and from other States of the Union, and claimed the right to sell, both in the original casks in which they

were imported, and in smaller quantities. The defendant was seeking to collect the State tax on these liquors, under the provisions of the 13th, 14th, and 15th sections of the act approved February 22, 1866, entitled "An act to establish revenue laws of the State of Alabama;" and also a county tax, which the commissioners' court of said county had assessed under the 73d section of said act. These sections of said act, the construction and validity of which are involved in the case, are in the following words:

"SEC. 13. *Be it further enacted,* That before it shall be lawful for any dealer or dealers in spirituous liquors to offer any such liquors for sale within the limits of this State, such dealer or dealers introducing any such liquors into the State, for sale, shall first pay the tax-collector of the county into which such liquors are introduced a tax of fifty cents per gallon upon each and every gallon thereof; *provided,* however, that any such liquors distilled in, or re-sold in the State, having paid one such tax, shall not be liable to any tax on the re-sale; *provided,* also, that alcohol employed for medicinal or manufacturing purposes, shall be exempted from the operations of this section.

"SEC. 14. *Be it further enacted,* That it shall be the duty of every vender, owner, or consignee with power of sale, of spirituous liquors, bringing any such liquors into the State for sale, to make full returns, under oath, of each and every gallon of such liquors received for sale, to the tax-collector of the county into which the same may be brought, and to pay the taxes thereon prescribed in the 13th section of this act, before offering the same for sale; and for every case of failure to make such returns and payment as aforesaid, such vender, owner or consignee shall pay an additional tax of fifty per cent.; and in case of a fraudulent return, shall be guilty of a misdemeanor, and on conviction shall be punished by a fine of not less than one thousand dollars, or imprisonment for not more than three years, at the discretion of the jury trying the case.

"SEC. 15. *Be it further enacted,* That it shall be the duty of the tax-collector of any county into which spirituous liquors may be brought or offered for sale, and returns have not been made to him therefor, as provided in the 14th sec-

tion of this act, to ascertain whether all such liquors have paid the taxes prescribed by the 12th section of this act ; and for this purpose he shall examine the vender under oath, who shall show to the satisfaction of the collector that such tax has been paid on all liquors in his possession, or sold by him, and failing to do so, such vender shall be liable for the tax on the same and an additional penalty of fifty per cent."

"SEC. 73. *Be it further enacted*, That the commissioners' court at such term shall determine and order the rate of per centage to be collected for county purposes, upon the payment of State tax, as shown by the next assessment book; *provided*, however, that the county tax shall not exceed fifty per centage of the State tax, as aforesaid."— Session Acts, 1865–6, pp. 15, 16, 27.

It was agreed between the counsel of the respective parties, in the court below, that "no objection should be taken to the presentation of the question by bill in chancery, and no question raised as to the regularity of the proceedings of the tax-collector; but that the defendant should be considered as interposing a demurrer, and assigning such special causes of demurrer as might raise the question of the constitutionality of the said act of the legislature, under which the defendant was proceeding to collect said tax." The cause being submitted on the bill and this agreement, the chancellor dismissed the bill; and his decree is now assigned as error.

D. C. ANDERSON, for appellant.—1. The tax on liquors introduced into the State, is an impost, or duty on imports. When imported for sale, it has the character of an *import* as long as it remains in the hands of the importer, and in an unbroken package.—*Brown v. Maryland*, 12 Wheaton, 437, 441.

2. The words of the constitution do not limit the inhibition to imports from foreign countries.—12 Wheaton, 449; *Almy v. State of California*, 24 How. 169.

3. The act operates directly on commerce among the States, and comes within the reason of the prohibition. It embarrasses the interchange of commodities between the

States.—*State v. North & Scott*, 27 Miss. 477 ; *New York & Erie Railway v. New Jersey*, 4 Am. Law Register, 385.

4. On imports the State can lay no other tax than to execute her inspection laws.

5. The words of the act exclude the idea that it affects the *interior* traffic of the State ; 1st, because it is not permitted to be sold in the State at all, until the charge is paid ; 2d, on its way to the market, or to sale, it is intercepted ; 3d, it assumes a restraining power on the introduction of the commodity for sale ; 4th, it may prohibit the introduction ; 5th, it is taxed only in the hands of the importer.

6. The act is not a police, but a fiscal measure. It recognizes the traffic as lawful. It regulates the terms of its introduction, as an article of commerce. The normal condition of inter-state commerce, under the constitution, is *freedom* from State restriction. In this question, the parties interested are citizens of different States.—See *The Passenger Cases*, 7 How. 400. The Alabama pilotage laws are declared to be unconstitutional.—5 Howard, 595.

7. It operates directly on a manufacturer living in Ohio. A burden is laid on his right to import.

SMITH & HERNDON, *contra.*—1. So far as the question of violation of the 10th section of the 1st article of the constitution of the United States is concerned, (and this law relates to liquors introduced into the State from other States of the Union,) they cannot be considered as " imports ", within the meaning of that article. "Imports" refer to articles brought into the Union from *foreign* countries ; and the States being integral and constituent parts of the Union, it would be a perversion of language to say that the *transit* of articles from one part of the Union to another was an *importation.*—5 How. 594, 601 ; 9 Cranch, 104 ; Bouvier, tit. *"Importation."*

2. So far as the liquors brought into the State from a foreign country are concerned, it is admitted, if complainants are the importers, that the tax would be void, so long as the liquors remain in the original bale, package, or vessel in which they were imported. But, if they are pur-

chasers from the importers; or if, being importers, they break the package for use or retail, by drawing off the liquor in small quantities, then they cease to be an import, or a part of foreign commerce, and become subject to the laws of the State, and may be taxed for State purposes, and the sale regulated by the State, like any other property. Chief-Justice Taney's opinion in *The License Cases*, 5 How. U. S. Rep. 574, construing Chief-Justice Marshall's decision in *Brown v. State of Maryland*, 12 Wheat. 446.

3. As to the liquors brought into the State from another State: The power to regulate commerce between the States is not prohibited by the constitution to the States; and until congress acts upon the subject, the States have the power to adopt regulations respecting it.—*Commissioners of Pilotage v. Cuba*, 28 Ala. R. 185; *Cooley v. Philadelphia*, 12 How. U. S. 318, 324; 5 How. U. S. Rep. 578, 601, 625. And as congress has made no regulation on the subject, the traffic in the article may be regulated by the State, as soon as it is landed in its territory, and a tax imposed upon it, or a license required, or the sale altogether prohibited, according to the policy which the State may suppose to be its interest or its duty to pursue.—5 How. 586. And the legislation of congress expressly recognizes this to be the true rule on the subject.—U. S. Internal Revenue Laws, § 78.

The case of the stamp-tax on bills of lading, on gold exported from California, of course, falls within the influence of 12 Wheaton; for the tax extends to gold exported to *foreign* countries.

JOHN W. A. SANFORD, Attorney-General, for the State. The power to tax persons, property, and occupations, is an incident of sovereignty, and may be exercised by the State upon all persons and property within its jurisdiction.—*The People v. Coleman*, 4 Cal. Rep. 57; *Nathan v. Louisiana*, 8 How. 82. And the fact that the exercise of this power may in some manner *affect* commerce, does not render it unconstitutional; for, while the State can not regulate commerce, it may do many things which, more or less, have an influence upon it. The State may tax a ship, or other vessel used in commerce, the same as other property owned by

its citizens.—*Passenger Cases*, 7 How. 402.   It may tax any vocation connected with commerce, however necessary it may be to its successful prosecution.—*Nathan v. Louisiana*, 8 How. 82.

But the revenue laws of Alabama do not regulate commerce with foreign nations, or with the States of the Union. They prescribe no terms upon which vessels may enter its ports ; they place no imposts upon articles of merchandise brought into the State, *simply as imports.*   All goods, wares, merchandise and property, of every description, enter its territory without any tax or custom.   But, after certain articles are in the State, and are offered as commodities of sale and traffic, then, some of them before, and some after sale, are liable to taxation.   But this is a matter of internal police ; and if this can not be permitted, the resources of the State would be greatly diminished.   Furthermore, this is but a regulation of internal trade, which is in no manner affected by the power to regulate commerce.—*Passenger Cases*, 7 How. 415.   "The completely internal commerce of a State may then be considered as reserved for the State itself."—*City of N. Y. v. Miln*, 11 Pet. 147.   So true is this opinion, that, notwithstanding it has been held, in *The State of Maryland v. Brown*, (12 Wheaton, 219,) that importation implies the right to sell, "so long as the articles are in the original bales or packages," the supreme court of Alabama, in the case of *Dorman v. The State*, has declared an act prohibiting the sale of intoxicating liquor (which may have been imported) in a particular portion of the State valid, and in no manner violative of the Federal constitution.— 34 Ala. 216, where this whole subject is elaborately examined.

If the State can prohibit the sale of imported articles in one part of its territory, it can in a much larger scope, and thus seriously affect the interest of the importer.   To this extent, the restraint would be an impediment or burden to commerce.   If one burden or impediment is lawful, why not another ?   If the profits of the merchant can be diminished by limiting his market to certain districts, why can not his profits be decreased by the imposition of taxes ?   If the first can be done without violating the article of the

constitution, reserving the power to regulate commerce, why can not it be done in the second instance? The sale of imports may be sustained, by the power to regulate internal affairs ; can not taxes be imposed by the same authority? If taxes can not be imposed upon the articles of commerce brought from other States, (as all property may be the subjects of trade,) it would follow, that nothing could be taxed in the State which was not produced within its limits. Such a conclusion would be disastrous to the State, and in contradiction to the right (often declared by the supreme court of the United States) of a State to tax all property within its territory, which belongs to its citizens.—*Nathan v. La.*, 8 How. 83.

All liquor brought into the State is not taxed, but only that portion which is offered for sale by "dealers, venders, or consignees with power of sale." May not this tax be upon a particular vocation, and the returns of the gallons of liquor required to be made, merely the means of ascertaining the amount of taxes such persons as "dealers" &c., should pay? Upon what principle can it be said, that the section of the law imposing taxes upon liquors regulates commerce, any more than the section which imposes a tax upon the largest quantity of goods on hand at any time within the year? Other merchandise, as well as liquor, is brought from neighboring States and foreign countries. If the section of the revenue laws taxing liquors be declared void, so must every portion of the law taxing property not produced within the State. All tax laws may, directly or indirectly, affect commerce ; but certainly they would not be considered as regulating commerce. Such a decision would render it impossible to support the State government.

The revenue laws of Alabama are not more objectionable than the license laws of Massachusetts, Rhode Island, and New Hampshire; yet the laws of those States were declared constitutional.—*License Cases*, 5 How. 504. Nor do the *Passenger Cases*, (7 How. 283,) conflict with the decision in 5 Howard.

The *Passenger Cases* arose upon an attempt to derive revenue by a tax on commerce between the United States and foreign nations, according to the laws of New York

and Massachusetts. The decision in those cases can have
but little effect in determining the one before the court. In
one of them, the attempt was clearly made to raise a
revenue on commerce by one State, altogether on alien
passengers; and by the other, on all passengers indis-
criminately. In this case, the intention is to raise
revenue by a tax on property purchased in another State,
and brought within the limits of this, owned here, enjoyed
here, protected here, and receiving the benefits of gov-
ernment in equal degrees with all other property. Why
should it not bear equally the burden of government? In
the case of *The State of Maryland v. Brown*, (12 Wheat.)
it was decided merely that, while the imported goods were
in their original bales or packages in the hands of the
importer, they could not be taxed. But, if the importer
divides the merchandise, and puts it in smaller or different
packages, for sale, or sells it in its original form, and it
thus enters into the property of the State, I am not aware
of any principle of law which will exempt it from taxation.

A statute of New Hampshire enacted, "that if any per-
son shall, without license from the selectmen," &c., "sell
any wine, rum, gin, brandy, or other spirits, in any quan-
tity," &c., "such person, so offending, shall be fined, for each
and every offense, on conviction thereof, in a sum not
exceeding fifty dollars."—5 How. 555. Notwithstanding
the decision of *Maryland v. Brown*, (12 Wheat.,) the above
law was declared constitutional. By that act, an importer,
after he had paid the tariff, could not sell liquors without a
license to do so. The license was a tax, and required to be
obtained before the sale of liquor. The revenue law of
Alabama enacts, (§ 13,) "that before it shall be lawful for
any dealer or dealers in spirituous liquors to offer any such
liquors for sale within the limits of this State, such dealer
introducing such liquors," &c., "shall first pay the tax-col-
lector," &c. By this law the tax is required before offering
for sale liquors, &c. If the license law of New Hampshire
has been declared constitutional, why not the revenue laws
of Alabama? The laws of both States were made to
regulate their internal trade, and therefore are not obnox-
ious to the objection of attempting to regulate commerce.

A. J. WALKER, C. J.—The 13th section of the revenue law, adopted at the late session of the legislature, requires the payment of a tax of fifty cents per gallon upon liquor introduced into this State by dealers in the same. It is settled in the *License Cases*, (5 Howard, 594,) that a State has no right to tax goods imported from a foreign country, while they remain in the hands of the importer, in the form and shape in which they were brought into the country; but that when the original package, barrel, or cask, is broken up, for use or retail, by the importer, or has been disposed of by him, it may become a subject of State taxation. The tax prescribed in the act of the legislature, therefore, can not be imposed upon liquors in the hands of the importer from foreign countries, remaining in the barrels or casks of importation; and the court should have enjoined the levy of the tax upon such liquors, so remaining. The importer has a right to sell, free from State interference, in the original casks or barrels, and to that extent, and no further, should be protected.

As to liquors introduced from other States, the question is materially different. We do not understand that the supreme court of the United States has held the power of congress to regulate commerce with foreign nations, among the several States, and with the Indian tribes, to be exclusive. Certainly, opinions to that effect are to be found in its reports; and such was the opinion of Judge Story. Chief-Justice Taney, with great emphasis, both in the *License*, and in the *Passenger Cases*, reported in 5th and 7th Howard, expresses the opposite opinion. In the *License Cases*, the point was expressly adjudicated by the holding of the court, that a law of New Hampshire was constitutional, notwithstanding a man had been indicted and convicted under it for a misdemeanor, because he had brought a barrel of American gin from Boston and sold it in New Hampshire. The court, Chief-Justice Taney being its organ, said: "The mere grant of power to the general government cannot, upon any just principles of construction, be construed to be an absolute prohibition to the exercise of any power over the same subject by the States."

It is conceded that it is difficult to decide, from the many

and various opinions of the judges of the supreme court of the United States in the many cases upon the subject, what its position upon this point is.—*Gibbons v. Ogden*, 9 Wheat. 1; *Brown v. Maryland*, 12 Wheaton, 419; *License Cases*, *supra*; *Passenger Cases*, 7 Howard, 283; *Cooley v. Board of Wardens*, 12 Howard, 299; *City of New York v. Miln*, 11 Peters, 102. But the question of what is the position of the supreme court of the United States on this point has been a matter of careful inquiry in this court. In *The Commissioners of Pilotage v. Steamboats Cuba et al.*, (28 Ala. 185,) it was held, that the grant of the power to congress in reference to commerce did not involve a prohibition to the States to legislate upon the same subject. The judgment in that case was reversed by the supreme court of the United States, in 1859, on another point, and with a very clearly implied recognition and approval of the position of this court on this question.—*Smoot v. Davenport*, 22 How. 227. The supreme judicial tribunal of the United States very clearly recognizes the doctrine, that State regulations on the subject of commerce are not void because they infringe the constitution, but are void only when " they interfere with, or are contrary to, the laws of congress, made in pursuance of its constitutional power to regulate commerce." The invalidity of State legislation upon the subject is put expressly upon the ground, that an act of congress, passed in pursuance of the constitution, must, under the second section of the 6th article of that instrument, be the supreme law of the land; and that therefore a law of the State, " though enacted in the exercise of powers not controverted, must yield to it." We thus have a recognition, as late as 1859, of the doctrine, that there is no constitutional prohibition to the States to legislate on the subject of commerce, and that that power is only denied to a State when there is an act of congress with which it interferes; and this, too, in a case from this court.

In 1859, the case of *Dorman v. The State*, (34 Ala. 216,) was decided, Mr. Justice R. W. WALKER delivering the opinion. In that case, in one of the most carefully considered and able opinions ever delivered from this bench, and after one of the ablest arguments ever heard in this court, the

question of the concurrence of the State authority to regulate commerce was passed upon. The court said: "The power to regulate commerce with foreign nations is not so exclusive in congress, as to prevent all State legislation upon the subject. It belongs to the class of concurrent powers; and every such power may be exercised by the State, subject to the single limitation, that, in the event of actual collision, the law of congress prevails, and the State law ceases to operate. It does not appear that, in the application of this act to the defendant, any collision has taken place with the laws of congress. He has, therefore, no right to call upon us to arrest its execution." There may be some matters connected with the subject of commerce, of such a nature that the power of congress to legislate in reference to them must necessarily be exclusive.—*Cooley v. Board of Wardens, supra.* But we have no such subject in this case.

Without further remarks upon the subject, we express the opinion, that the power of the State to legislate on the subject of commerce is, as a general rule, concurrent with that of congress, and must only yield when it comes in conflict with an act of congress ; and it is settled in this court that such is the law, and such is the ascertainment of the law by the supreme court of the United States.

There being no prohibition upon the State, to legislate upon the subject of the commerce of other States with it, it may so legislate, with the qualification, that it can not enter upon ground occupied by congress. There is no act of congress with which a State tax upon liquor introduced from other States can interfere; and therefore it is permissible for the State to impose a tax upon the sale of liquor introduced from another State. Such a tax is not only constitutional, but obviously just and proper ; for a tax to the same extent is imposed upon liquors manufactured in the State.

It is admitted that the law under consideration is broad enough to apply to liquors imported from foreign countries; but it is void only in so far as it is in collision with the acts of congress on that subject.

It is contended that the tax is unconstitutional, because

it is a tax upon imports. The word *import*, in the consti-
tution of the United States, refers only to articles intro-
duced from foreign countries.—Opinion of Mr. Justice
McLean, *License Cases, supra*; opinion of Mr. Justice
Catron, *ib.* 601; Bouvier's Law Dic., *Importation; Barrett
v. S. & D. R. R. Co.*, 2 Man. & Gr. 155, note.

We have been referred to the case of *Almy v. State of
California*, 24 How. 169. This case was in reference to a
law of California, requiring a stamp to be put upon a bill
of lading, for transportation from any point within, to any
point without the State. The supreme court of the United
States, in the case cited, held, that this law was unconsti-
tutional, in its requisition that a bill of lading for gold, to
be transported to New York, should be stamped. The
unconstitutionality of the law was put upon the ground,
that it was a tax upon an export. It is now contended
before us, on the authority of this case, that an article carried
from one State to another is exported from one, and
imported into the other; and that, therefore, the words *import*
and *export* are used in reference to the transfer of an article
from one State into another. The argument built upon
this decision would be good, if it appeared that the gold
was destined for no place besides New York. The state-
ment of the facts of the case is very meagre, and found
only in the opinion of the court. From that statement it
can not be ascertained that the gold was not shipped to New
York, *in transitu* for some foreign port. From some ex-
pressions in the argument of the court, we infer that such
was the case. We are not convinced that it was intended
to hold that the character of an "import" or "export"
could be stamped upon an article, by its transfer from one
State to another; and we are not disposed to regard it as
an authority to that effect.

We are referred to some State decisions, which are sup-
posed to militate against the views expressed by us. If
they do, we are not willing to follow them.

The chancellor should have dismissed the bill, as to the
tax upon liquor introduced from other States, and as to
liquor imported from a foreign country, and not kept
unbroken in the vessel in which it was imported, in the

hands of the importer; and should have retained it as to imported liquor in the hands of the importer, and in the unbroken bulk in which it was imported, and also as to the tax for county purposes.

2. By the 73d section of the revenue law, county assessments, not exceeding fifty per cent. upon the State tax, are authorized to be made upon the assessment books, on the first Monday of September, by the court of county commissioners. The tax on liquor offered for sale does not go on the assessment books; and there is consequently no power in the court of county commissioners to assess a county tax upon the State tax on liquor introduced into the State.

The decree is reversed, and the cause remanded.

BYRD, J.—There is only one point of difference between a majority of the court and myself. There seems to be a conflict between different decisions of the supreme court of the United States, on the question upon which we differ. This apparent or real conflict, in my opinion, has been occasioned by not keeping up the proper distinction between the powers of the State and congress over the subject of internal commerce.

The States certainly have the right to regulate *internal* commerce, and congress has *the exclusive* right to regulate foreign and inter-state commerce.—2 Story on Const., § § 1067, 1071; *Gibbons v. Ogden,* 9 Wheaton, 1–198; *Brown v. Maryland,* 12 Wheat. 419, 446; 3 Cowen, 713; *City of N. Y. v. Miln,* 11 Peters, 158; *Passenger Cases,* 7 Howard, 393–411; 1 Kent's Com. § 10; Rawle on Const., ch. 9, p. 81; Sergt. on Const., ch. 28, p. 291. These authorities hold, that the power granted to the national goverment, to regulate foreign and inter-state commerce, does not stop at the boundaries of a State, but follows such commerce within the limits of a State, so long as the article of commerce retains the *form and character* in which it enters a State; and that whenever a State passes a law to regulate its *internal* commerce, such law is constitutional; but, as soon as congress exercises its power, within its constitutional limits, to regulate foreign and inter-state

commerce within a State, that in such case, the State law must give way before the supremacy of the national law. And here is where the apparent conflict between certain adjudications commences. Some of them have not drawn with clearness the distinction between the power of a State to regulate commerce by law *within its own limits*, and a law of a State which affects commerce *between the States*, after it enters a State, and before it is sold by the importer.

In the language of Chief-Justice Marshall, in the case of *Brown v. The State of Maryland*: " It may be proper to add, that we suppose the principles laid down in this case to apply equally to importations from a sister State."— 12 Wheaton, p. 449. And in the language of Chancellor Kent, "This power, like all other powers of congress, was plenary and absolute within its acknowledged limits."— 1 Com. 437. And Judge Story says: " It has been settled, upon the most solemn deliberation, that the power" (speaking of the power of congress to regulate commerce between the States) " is exclusive in the government of the United States."—2 Story on Const., § 1067. And again, he says (§ 1071): "The reasoning by which the power given to congress to regulate commerce is maintained to be exclusive, has not been of late seriously controverted."

I have not noticed, in any opinion of any court, or elementary writer, that the 10th article of the amendments to the constitution, has been considered in connection with this question. That article is as follows: "The powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." This, to my mind, is very suggestive. If powers not delegated to the United States are reserved, upon a familiar rule of construction, it would seem to follow, *that powers delegated are not reserved.* But, however this may be, I am of opinion, upon authority and principle, that a State can make no discrimination between foreign and inter-state commerce; and to hold that a State has not the power to tax foreign goods in unbroken packages, before they enter into the mass of the property of the State, and that it can so tax unbroken packages coming from a sister State, before they

enter into the mass of the property of the State, is such a discrimination. Such a discrimination would be one in favor of foreign commerce, against the commerce of a sister State.

Besides, if a State has the power to make any law affecting inter-state commerce, to the extent above defined, it would seem to follow, that it had the power to discriminate between the commerce of different States ; *the very evil*, in my judgment, which the framers of the constitution had in view to prevent, in conferring the power on congress to regulate commerce between the States. The power to regulate foreign and inter-state commerce is conferred on congress in the same clause of the constitution, and in language which admits of no distinction as to its influence on the question under discussion.

Upon this construction of the constitution, the concurrent powers of the State and Federal governments are limited within appropriate boundaries ; and, what is very desirable, it defines such powers within limits which will greatly diminish the antagonism of the legislation and adjudications of the legislative and judicial departments of the State and national governments; both of which, *within their appointed spheres, are sovereign and supreme.*

I am content in relying upon the authority of such distinguished jurists as Chief-Justice Marshall, Judge Story, and Chancellor Kent.

Note by Reporter.—On a subsequent day of the term, in response to an application for a rehearing by the appellant's counsel, the following opinion was delivered :

A. J. WALKER, C. J.—We deem it necessary to respond to a part of the argument made in support of the application for a re-hearing in this case. Our original opinion does not admit that the case of *Almy v. The State of California*, (24 Howard, 169,) necessarily involved the assertion, that the carrying of articles from one State to another made them exports, or that the bringing them into one State from another made them imports, within the meaning of the second paragraph of the tenth section of the first article of

the constitution. We then thought that the meager state-ment of facts in the opinion did not exclude the idea, that the gold mentioned in the opinion was shipped from San Francisco to New York, *in transitu* to some foreign port. The counsel of the appellant accompany their application for a re-hearing with a transcript of the record, and an examination of it convinces us that the gold was shipped to New York as the termination of the voyage, and that the question, whether the carrying of an article from one State to another constituted it an "export," was involved in the case. Notwithstanding the question was involved in the case, it was passed over without notice in the opinion; and it would seem as if the point had not been called to the attention of the court. The phraseology of the opinion indicates that the diversity between the facts in that case, and in those of *Brown v. The State of Maryland*, was not observed, and that the case was regarded in the same light as if the shipment had been made to a foreign port; and this explanation is rendered more plausible by the fact, that the counsel on neither side of the case appear to have no-ticed this diversity of facts in their arguments. It must be conceded, however, that the failure to notice the difference in the facts might have resulted from a conviction that it was immaterial. We can not, however, avoid feeling some doubt, whether the court intended to stamp every transfer of property from one State to another with the character of an exportation, and every introduction of property into one State from another with the character of an importation.

We entertain a thorough conviction, that the clause of the constitution referred to above does not prohibit the taxing by a State of the sale of articles brought into it from another State. This conviction is based upon the belief, that the terms "imports" and "exports," in that clause, refer alone to things introduced from foreign countries, and sent out to foreign countries. The question was directly presented in the case of *Pierce et al. v. The State of New Hampshire*, (one of the *License Cases*,) 5 Howard. The law of New Hampshire made the sale of liquor without license an indictable offense. Under that law, the defendants were indicted, and convicted, for the

sale without license of a barrel of American gin, purchased in Massachusetts, and brought coastwise to New Hampshire, and there. sold in the same barrel, and in the same condition, in which it was purchased. The court instructed the jury, "that the statute, as it [regarded] that case, was not repugnant to the clause in the constitution of the United States, providing that no State shall, without the consent of congress, lay any duty on imports or exports ; because the gin in this case was not a foreign article, and was not imported into, but had been manufactured in the United States." Chief-Justice Taney,'in the concluding paragraph of his opinion, clearly determines the point. He says : "Upon the whole, the law of New Hamphshire is, in my judgment, a valid one. For, although the gin sold was an import from another State, and congress have clearly the power to regulate such importations, under the grant to regulate commerce among the several States ; yet, as congress has made no regulation on the subject, the traffic in the article may be lawfully regulated by the State, as soon as it is landed in its territory, and *a tax imposed upon it*, or a license required, or *the sale altogethar prohibited*, according to the policy which the State may suppose to be its interest or duty to pursue." Thus, we have the declaration of Chief-Justice Taney, who wrote the opinion in *Almy v. State of California*, that the State of New Hampshire had the power to tax a barrel of gin brought into that State from Massachusetts and sold in the form of its introduction. In the same case, Judge McLean, (p. 594,) and Judge Catron, (p. 611,) and Judge Daniel, (p. 614,) and Judge Woodbury, (p. 623,) very clearly indicate the opinion, that imports and exports, as mentioned in the 10th section of the first article of the constitution, refer alone to the introduction and sending off of articles in foreign commerce.

In the case of *The State v. Pinckney*, (10 S. C. Law R. Richardson, 474,) it was held, that articles brought in from other States, and sold in the form and bulk in which they were so brought, were not imports within the meaning of the provision of the constitution of the United States, and that a statute taxing them was valid. A decision identical in principle with that of *The State v. Pinckney* was made in

Georgia, in *Cumming v. Savannah,* R. M. Charl. 26. To the same effect was the decision in Mississippi, (Judge Sharkey delivering the opinion,) in *Harrison v. Mayor of Vicksburg,* 3 Sm. & M. 581. In the State of Michigan, *(Beall v. State,* 4 Blackf. 107,) there is a decision which supports the same principle.

The remark made by Chief-Justice Marshall, in *Brown v. Maryland,* (12 Wheaton,) applying the principles of that case to importations from another State, was a mere *obiter dictum,* and was not treated as authority in the *License Cases.* Judge McLean (p. 594) says of it: "Whilst the remark can not fail to be considered with the greatest respect, coming as it did from a most learned and eminent Chief-Justice, yet it can not be received as authority. It must have been made with less consideration, than the other points ruled in that important case."

Section nine of the first article of the constitution relates to the migration or *importation* of persons. The word "importation" here, obviously, and by universal consent, relates to the introduction of persons from abroad; and no reason can be perceived why the word importation in that section should receive an interpretation variant from that which is sought to be put upon the word "import" in the next section. It seems a fair deduction, that "import" in the constitution was used in reference to the geographical area within which it prevails, and was designed to characterize articles brought into that area from without. Consistently with this idea, we find that the power to regulate commerce was not left to a general phraseology, but, by express words, is extended to commerce with foreign nations, and among the States, and with the Indian tribes.

The power of taxing chattels brought in from the sister States of the Union, in the form in which they were brought in, has often been exercised in this State; and it is not known that it has ever been denied. It has certainly been exercised in reference to slaves and dry-goods brought into the State.

When we seriously doubt whether a law is unconstitutional, after we have applied the legitimate tests, we must rule in favor of its validity. We, of course, recognize our

Hinson v. Lott.

obligation to follow the decisions of the supreme court of the United States. But, conceding that the case of *Almy v. California* is in point, an examination of it fails to show that the question was considered; and we deem it inconsistent with the opinions of the judges in the *License Cases*, and with the decisions of the State courts. It is also at war with the undisputed practice of this State, and with our own convictions. In the *Passenger Cases*, Chief-Justice Taney expressed his consent that thenceforward it should be regarded as the law of the court, that the opinion upon the construction of the constitution should always be open to discussion, and its judicial authority should depend on the force of the reasoning in support of it. If the supreme court of the United States did intend, in *Almy v. California*, to give to the word "import" in the constitution a meaning broad enough to affect the trade between the States, it will not be disrespectful for us to rest upon our own reasoning, the decisions in other States, and the opinions in the *License Cases*, and afford an opportunity by deciding in favor of the State law for a revision of the question. At least, we can not say that we are clear in the opinion, that the law is unconstitutional, or that the supreme court of the United States will so decide; and we must sustain it.

We remark, in conclusion, that congress has not regulated either the quantities or bulks in which articles from other States may be introduced, as it has done in reference to articles brought from abroad. If it be held that articles coming from other States can not be taxed in the original form, our laws regulating the traffic in liquors will be susceptible of evasion so easily as to make them of little practical value.

The petition for a rehearing is overruled.