[State *ex rel.* Porter v. Crook, Judge, &c.]

# State *ex rel.* Porter *v.* Crook, Judge &c.

*Application for Mandamus.*

1. *Constitutional law; power of legislature to provide for location of county court house.*—The removal of the court house of a county and its permanent location is clearly within the power of the legislature, without limitation or restraint; and in the exercise of this authority the legislature can by act regularly passed direct the removal of the court house from one place and its permanent location at another, or it may choose to select two or more places and leave the determination of one of them as the location to popular vote, adopting such method as it pleases to ascertain the wishes of those with whom it desired to consult.

2. *Removal of court house; election therefor not governed by regular election laws.*—The general statutes regulating elections in this State apply only to elections of public officers, and have no application and are not intended to regulate elections authorized by act of the legislature to determine the permanent location of the court house of a county.

3. *Constitutionality of act to provide for permanent location of court house in Calhoun county; construction of statute.*—The act approved November 30th, 1898, "to provide for the permanent location of the county site of Calhoun county by a vote of the qualified electors of said county," (Acts of 1898-1899, p. 8) and the amendatory act approved February 1, 1899, (Acts of 1898-1899, p. 494), embody all the provisions necessary for the making of a choice between the cities of Anniston and Jacksonville for the site of the county court house of Calhoun county by an election to be held thereunder, and provide for the ordering of an election by the board of commissioners who are in no way connected with the conduct and management of elections under the general law, for notice of the time and purpose for which the election is to be held, for the appointment by the board of registrars, inspectors, clerks and returning officers, and the entire machinery for the holding of the election as provided for in the title, without the necessity of resorting to any other law in force regulating elections. Such acts also prescribe that the persons allowed to vote at said elections shall have certain qualifications. *Held:*

(1.) The provisions of the acts requiring inspectors to number each ballot with a number to correspond with the number opposite the elector's name on the poll list, thereby destroying its secrecy is not in violation of Article VIII, § 2

[State *ex rel*, Porter v. Crook, Judge, &c.]

of the Constitution, which ordains that "all elections by the people shall be by ballot and all elections by persons in a representative capacity shall be *viva voce*," since such provisions of the constitution do not relate to elections of the character provided for by the acts under consideration.

(2.) The provisions of the acts in reference to registration, which, by express and penal terms, excludes certain qualified electors, is not in violation of Article VIII, § 1 of the Constitution.

(3.) The fact that the act under consideration provided a method of voting and a plan for the conduct of the election and certification of the result entirely at variance with the election laws of the State, does not infringe Article VIIᵢ. § 5 of the Constitution, which provides that all elections laws "shall be uniform throughout the State."

4. *Constitutional law; construction of statute.*—In the construction of a statute passed by the General Assembly to determine whether or not it infringes the constitutional provision that "each law shall contain but one subject which shall be clearly expressed in its title," (Const. Art. IV, § 2)', it is proper to examine the body of the act and the title together and with reference to each other, in order to ascertain the meaning of the words employed in the title.

5. *Constitutionality of act to provide for permanent location of court house in Calhoun county; construction of statute.*—In the title of the act of the General Assembly "to provide for the permanent location of the county site of Calhoun county by a vote of the qualified electors of said county;" (Acts of 1898-99, pp. 8 and 494), the words "qualified electors" as used therein must not be held to be referable to those persons who are qualified electors under the constitution and statutes of the State; and the fact that in the body of the act there are qualifications prescribed for the persons, who are allowed to vote at the election to be held for the purpose of determining the permanent location of the court house of Calhoun county, and certain classes and descriptions of qualified electors under the general laws are excluded from participating in such election, does not make the act variant from its caption and violative of Section 2, Article IV of the Constitution, which provides that "each law shall contain but one subject which shall be clearly expressed in its title."—(McCLELLAN, C. J. and HARALSON, J., *dissenting*).

Appeal from the Circuit Court of Calhoun.

Tried before the Hon. JOHN PELHAM.

This is an appeal from a final judgment rendered by the circuit court of Calhoun county, Alabama, dismiss-

ing appellant's petition for a writ of *mandamus* or other appropriate remedial writ, directed to the appellee as judge of probate of Calhoun county, commanding him to remove the books, papers and records of his office from Anniston to Jacksonville, and at the latter place keep his office at the court house and there open for the transaction of business as prescribed by section 3361 of the Code of 1896.

The State of Alabama on the relation of C. J. Porter filed a petition in which the petitioner alleged that he owned an unpaid debt secured by mortgage, the record of which in the said probate office, together with the other books, papers and records thereof, had been by respondent removed to Anniston and there kept in an office which respondent claimed to be the probate office by reason of an election held under Acts of the Legislature of 1898-9, to wit: "An act to provide for the permanent location of the county site of Calhoun county by vote of the qualified electors of said county," approved November 30th, 1898; and an act to amend said act, which said amendatory act was approved February 1st, 1899, which said act and amendment thereof is contained in the session acts of the Legislature of Alabama of 1898-1899 from pages eight to fifteen both inclusive, and pages 494 to 499 both inclusive. That said acts were unconstitutional, null and void; that the court house and count site of said county were still at Jacksonville and not at Anniston; that all pretended proceedings under said Acts of 1898-1899 were null and void by reason of the unconstitutionality and the invalidity thereof; that any pretended exercise of authority by said judge of probate in removing his office to the city of Anniston and his failure and refusal to hold and keep open the same and the books, papers and records thereof in the court house in said town of Jacksonville, is contrary to law and a failure in the performance of respondent's duty as such judge of probate. That petitioner is a resident citizen of Calhoun county and has resided there more than five years; that he made a demand upon said respondent as such judge of probate, after such removal to Anniston, that he keep his office as such judge of probate at the court

house in the town of Jacksonville and open there for
the transaction of business as required by law, which
demand was peremptorily refused on the ground and
for the reason claimed by respondent that by virtue of
said acts of 1898-99 of the General Assembly of Ala-
bama and proceedings thereunder the county site of
said county had been removed from Jacksonville to
Anniston where he had opened up the probate office of
said county for the transaction of all the business of
the office; and, that he would continue, henceforth, to
hold the said office in Anniston. The petition is full
and formal in its allegations and properly verified by
affidavit of the petitioner. Upon filing and inspection
of the petition Hon. John Pelham, as Judge of the Sev-
enth Judicial Circuit of the State of Alabama,
ordered that it be entertained by the circuit court of
Calhoun county and issued an alternative writ return-
able into the said court. Respondent accepted service
of the original petition and alternative writ and entered
an appearance in the said circuit court in said cause,
and when court met appeared in the court and filed a
demurrer to the petition, the grounds of which were as
follows:

"1st. For that said petitioner fails to show a suffi-
cient interest to authorize the granting of the relief
prayed for in said petition. 2d. For that no sufficient
ground is stated in said petition why an order should
be issued requiring said defendant to remove all the
books, records and papers thereof from Anniston to
Jacksonville. 3d. For that it appears upon the face
of the petition that the probate judge refused to return
the records from Anniston to Jacksonville upon the
ground that the county site of said county of Calhoun
had been by law removed from said town of Jackson-
ville to the city of Anniston and said petition fails to
show by any sufficient averment that the county site
of said county has not been so by law removed. 4th.
For that it is alleged as a conclusion in said petition
that the act or acts under and in pursuance of which
the county site of Calhoun county was removed from
the town of Jacksonville to the city of Anniston is un-
constitutional and void, but fails to show wherein or in
what respect the said act or acts of the legislature are

invalid or unconstitutional. 5th. For that said peti-
tion fails to set forth the provision of the act or acts
of the legislature which are alleged to be unconstitu-
tional and void and fails to set forth the proceeding or
proceedings under said act or acts of the legislature
which are unconstitutional and void. 6th. For
that it does not appear that the said act or
acts of the legislature referred to in the peti-
tion are unconstitutional or void or are in any re-
spect invalid or inoperative. 7th. For that the court
will judicially know that the county site of Calhoun
county has been removed by law from Jacksonville to
Anniston." The court sustained the demurrers, against
petitioner's objection and exception and petitioner de-
clining to amend, the court rendered final judgment dis-
missing the petition out of court, to which petitioner
objected and excepted. Appellant's assignments of
error on this appeal raise the question of the correct-
ness of the judgment of the lower court in sustaining
respondents' demurrer and dismissing the petition.

BROWN & DRYER, for appellant.—The relator shows
by the allegations of his petition that he has a special
interest and title in the duty which he seeks to compel
the respondent to perform. He has no other adequate
remedy to enforce the performance by the Judge of Pro-
bate of his official duty and in such case *mandamus*
is the proper remedy.—13 Am. & Eng. Enc. of Pl. and
Pr. p. 635, note 7; *State ex rel. Brickman v. Wilson,* 26
So. Rep. 482; *Baldwin v. Koons,* 81 Ala. 278; *Tarver
v. Commissioner's Court,* 17 Ala. 527.

This is not a private act of the legislature, but a pub-
lic and general act relating to the location of the county
site of the county. Courts will take judicial notice of
an act of this character.—*Grider v. Tally,* 77 Ala. 426;
*Ex Parte Reynolds,* 87 Ala. 138.

The court takes judicial notice of the Constitution
of the State and determines as matter of law whether
or not a public act of the General Assembly is in con-
travention of any of its provisions. These principles
are elementary.—Stephen on Pleading, pp. 346, 423; 12
Encyc. Pl. and Pr. 1020.

[State *ex rel.* Porter v. Crook, Judge, &c.]

The *ballot* implies absolute and inviolable secrecy. "This privilege of secrecy may properly be regarded as the distinguishing feature of ballot voting, as compared with open voting, as, for instance, voting *viva voce*." This privilege is not confined to the moment of depositing the ballot. If it were, it would be of no value. Hence, under constitutions ordaining that "all elections by the people shall be by ballot;" acts of the legislature providing for numbering the ballots to correspond with the numbers opposite voters' names on the poll lists, are held void.—*Williams v. Stein*, 38 Ind. 89; *Brisben v. Cleary*, 26 Minn. 107; *State v. Shaw*, 9 S. C. 94, 139, 141; *State ex rel. Brieson v. Barden*, 77 Wis. 606; *Runge's Case*, 42 L. R. A. (Wis.) 242; *State ex rel. Smith v. Anderson*, 26 Fla. 259; *Taylor v. Bleakley*, 55 Kansas 13; *Ex parte Arnold*, 128 Mo. 256; *Pearson v. Supervisors*, 91 Va. 322; *Temple v. Mead*, 4 Vt. 535; *People ex rel. Gurdon v. Cicott*, 16 Mich. 283; *Atty. Gen. v. Bd. of Detroit*, 58 Mich. 213; *People v. Pease*, 27 N. Y. 45, 81; 3 Am. & Eng. Enc. Law (2d ed.) 768-769.

While the legislature may prescribe necessary regulations to ascertain who are qualified, it cannot through such means impair the qualifications of voters. "If this were not an immutable principle elements essential to the right itself might be invaded, frittered away, or entirely excinded under the name or pretense of regulation. * * * As a corollary of this, no constitutional qualification of an elector can in the least be abridged, added to, or altered, by legislation or the pretense of legislation."—*Page v. Allen*, 58 Pa. 346-7; *State ex rel. Wood v. Barker*, 38 Wis. 71; *Perry v. Whittaker*, 71 N. C. 475; *People ex rel. VanBakkelen v. Canady*, 73 N. C. 198; *Rison v. Farr*, 24 Ark. 161; *Kennen v. Wells*, 144 Mass. 497; *Edmonds v. Banbury*, 28 Iowa 267; *Fort Dodge etc. v. Wahkansa*, 17 Iowa, 86; *Pearson v. Supervisors*, 91 Va. 322; *State v. Connor*, 22 Neb. 265.

"A county is an involuntary political or civil division of the State, created by statute to aid in the administration of the government. It is in its very nature, character and purposes, public, and a governmental agency, or auxiliary rather than a corporation [municipal]. All the powers with which the county is en-

trusted, are powers of the State, and all the duties with which they are charged, are the duties of the State. The character of these powers, so far as counties in this State are concerned, are all for the purpose of civil and political organization."—*Askew v. Hale County*, 54 Ala. 639; *Anderson v. State*, 72 Ala. 189.

The act in question does not follow the caption by reason of excluding with the utmost rigor those classes of qualified electors enumerated above. If the act as passed had been clearly expressed in its title it would have read: "An act to provide for the permanent location of the county site of Calhoun county by a vote of certain classes of the qualified electors of said county, to the exclusion of other classes of qualified electors of said county." Such is the act, though not so entitled. It is needless to say, if this position is sound, that the legislature would not have passed the act, and the whole is void.—*Yerby v. Cochrane*, 101 Ala. 541; *Stewart v. County Comrs. of Hale*, 82 Ala. 212; *Powell v. State*, 69 Ala. 13; *L. & N. R. R. v. Morris*, 65 Ala. 197-8; *Randolph v. Builders Supply Co.*, 106 Ala. 513; *Collins v. State*, 88 Ala 215; *State ex rel Knowlton v. Williams*, 5 Wis. 308; *Dells v. Kennedy*, 49 Wis. 556; *Parker v. St. J. R. R. Co.*, 39 Mo. 484.

The act in its provisions as to the character of the ballot, the method of voting and the whole scheme of the conduct and certification there, is entirely variant from the existing election laws of the State. It is not contended that the legislature could not make a new and different election law; but, if so, it must have been uniform and operative throughout the State. True it is that the election was to be for a single county and for a particular purpose; but it was an election, nevertheless, and if the legislature were not satisfied to conduct it under existing election methods, it must have decided, in deference to the constitution, to have provided a new general election law consonant with its desires, and held the election under it, or else have removed the county seat without an election. Though the legislature may have power to do a thing directly, yet if it choses to do it by means regulated by the Constitution, and no other, the means must be in harmony with the Constitution else the

end cannot be attained through those means. To hold otherwise would be to emasculate the Constitution, and put the legislative will above it.—Cooley on Constitutional Limitations, pp. 68-69; *Ballentyne v. Wickersham*, 75 Ala. 533; *Rison v. Furr*, 24 Ark. 161.

THOS W. COLEMAN, JR. and KNOX, BOWIE & DIXON, *contra.*—The acts involved in this controversy are public statutes of which the court takes judicial notice, and the court also takes judicial notice of the location of a county seat of a county, and of a change of the same by an election of the people of the county.—*Andrews v. Knox County*, 70 Ill. 65; 12 Amer. & Eng. Encyc. of Law, 176, notes.

The legislature has plenary authority, except so far as it may be limited by some constitutional provision —State or Federal. If, on any given subject, there are no constitutional restrictions, then the only limitation is the discretion of the Legislature.—*Dorman v. State*, 34 Ala. 216. There are no constitutional restrictions on the power of the legislature to establish or change county seats, and the authority of the Legislature to enact legislation on that subject is plenary. A county seat may be changed by direct legislation or by submitting the question to a vote of the people, or in any other manner legislative discretion may see proper to adopt.—*Ex parte Hill*, 40 Ala. 121; 7 Amer. & Eng. Encyc. of Law, 1012; *Mobley v. Police Jury*, 6 So. Rep. (41 La. Ann.) 779.

The courts of the various States have so far as we are aware, uniformly held, wherever the question has been before them, that constitutional restrictions as to the subject of election and suffrage do not apply to elections for offices or elections or questions submitted to the people where the Legislature had plenary authority to provide for the manner of the selection of the officers, or for the disposition of the question which they may have submitted to an election.—*Bew v. State*, 13 So. Rep. (Miss.) 868; *Hanna v. Young*, 34 L. R. A. 55; *Plumer v. Yost*, 144 Ill. 681; *Mayor v. Shattuck*, 41 Am. St. Rep. 208; *Graham v. City of Greenville*, 2 S. W. Rep. 742; *McMahon v. Savannah*, 42 Amer. Rep. 65; *Hall v. Marshall*, 80 Ky. 552; *Curron v. Taylor*, 18 S.

W. Rep. 232; *State v. Dillon*, 22 L. R. A. 124; *Buckner v. Gordon*, 81 Ky. 665; *Belles v. Burr*, 76 Mich. 1.

In Alabama our own Supreme Court has declared that the legislature might make such regulations as it saw proper in providing for the election of municipal officers. *Moulton v. Reid*, 54 Ala. 320; *Leigh v. State*, 69 Ala. 261; *McGraw v. County Com.*, 89 Ala. 407; *Gandy v. State*, 82 Ala. 61.

The other contention of appellant that the acts in question offend Article 4, paragraph 2 of the Constitution is based on the fact that the caption of the act approved November 30, 1898, suggests or indicates an election to be held by *all* of the qualified electors of the county, while in the body of the act, and the amendatory act, a few of the qualified electors are, or may be, excluded.—*Ballentyne v. Wickersham*, 75 Ala. 533. "It is not essential that the title shall disclose the subject with the most precise accuracy—it is enough if the subject be *one*, and the title so express the subject that the reader will readily understand the several provisions of the enactment being embraced in, or referable to that subject." 3 Brickell Dig., 137, § 83; *Montgomery B. & L. Asso. v. Robinson*, 69 Ala. 418.

TYSON, J.—The two acts passed by the General Assembly during its sessions of 1898-99—one approved November 30, 1898 (Acts 1898-99, p. 8) entitled an act, "To provide for the permanent location of the county site of Calhoun county by a vote of the qualified electors of said county;" the other, approved February 1, 1899 (*Ib.* p. 494) entitled an act "To amend an act, entitled 'An act to provide for the permanent location of the county site of Calhoun county, by a vote of the qualified electors of said county,' approved November 30, 1898"—embody all the provisions necessary for the making of a choice between the two places named in the acts, to wit, Anniston and Jacksonville, as the site for the county court house of Calhoun county by an election to be held thereunder. To particularize, they provide for the ordering of the election by a board of commissioners named, at which persons are to be allowed to vote possessing certain qualifications therein

[State *ex rel.* Porter v. Crook, Judge, &c.]

specified, notice of the time and the purpose for which the election is to be held, to be given by this board of commissioners, the appointment by the board of registrars, inspectors, clerks and returning officers, the registration of voters, the opening and closing of the polls, the places where the election is to be held, the canvass by the board at the court house in Jacksonville on a designated day of the vote cast and a certificate by the commissioners who compose the board in writing of the result of the election to be filed and recorded in the office of the judge of probate. They also prescribe the duties of the registrars, inspectors, clerks and returning officers, the oaths to be administered to each of these officers and, as we have said, the qualifications of the electors which is expressed in an oath to be administered by the registrar to each elector, to be subscribed by such elector, before registering. In short, the entire machinery for the holding of the election is expressly provided in detail in these acts themselves, without resort having to be had to any other law in force regulating elections. Indeed, all legislative intention that the general laws regulating elections to be held in the State, is conclusively excluded by the fact that the whole conduct and management of the election and the ascertainment of the result is entrusted to the board of commissioners who are in no way connected with the conduct and management of elections under the general laws. Not a member of this board is an officer of the State or of the county of Calhoun upon whom is devolved the duty of an election officer under the general statutes.

Objections are taken to these acts upon grounds involving their constitutionality, and, really, these objections constitute and present the only questions for consideration. Instead of garnering them out of the allegations of the petition for ourselves, we will state them, substantially, as they are set out in appellant's counsel's argument.

1. The provisions of the acts requiring inspectors to number each ballot with the number to correspond with the number opposite the elector's name on the poll list, violate section 2 of Art. VIII of the constitution which ordains that "All elections by the people shall be by

[State *ex rel.* Porter v. Crook, Judge, &c.]

ballot, and all elections by persons in a representative capacity shall be *viva voce.*"

2.    The provisions of the act in reference to registration, by express and penal terms exclude certain classes of qualified electors in violation of Section 1 of Art. VIII of the constitution.

3.    The act being entirely at variance with the existing election laws of the State, and being confined in its operation to one county, contravenes section 5 of Art. VIII of the constitution which provides: "The general assembly, shall pass laws, inconsistent with this constitution, to regulate and govern elections in this State, and all such laws shall be uniform throughout the State."

4.    The body of the act varies from the caption, in that it excludes certain classes and descriptions of qualified electors, by express and penal provisions, and thus violates Section 2 of Art. IV of the Constitution providing that "Each law shall contain but one subject, which shall be clearly expressed in its title."

It is urged in support of the three first objections that the act requires the numbering of the ballot, thereby destroying its secrecy, that the system of registration provided by it disfranchises some persons who are otherwise entitled to exercise the privilege of the electoral franchise conferred by Article VIII of the Constitution, and the method of voting and the scheme of the conduct and certification thereof is entirely variant from the existing election laws of the State. All this may be conceded for the purposes of this case and yet it does not follow that the act is subject to the objections. It might well be doubted whether the provisions of Art. VIII of the Constitution which relate exclusively to suffrage and elections, have reference to any election by the people other than those held to elect public officers. *Hanna v. Young,* 34 L. R. A. (Md.) 55 and authorities cited. It is unnecessary, however, to decide this question. The subject matter of the act under consideration was clearly one within the power of the legislature, without limitations or restraint to deal with.—7 Am. & Eng. Ency. of Law (2d. ed.) pp. 1019, 1020 and notes. It could have directed the court house to be re-

moved from Jacksonville to Anniston by simply ordering it to be done. Or it could have directed the commissioners named in the act to ascertain the wishes of or choice of the inhabitants of the two towns including the women and children or of the inhabitants of the entire county by petition, by personal interviews, by ballot, or otherwise, and upon certification of their findings of the result the site should be the one so ascertained by them to be the selection of a majority of those inhabitants who expressed their choice. In other words, the legislature had the right to adopt any method it chose to ascertain the wishes of those with whom it desired to consult in the locating of the court house at the one or the other of the two places. It was under no obligation to consult any one or to confer with any one; but there is no obstacle to its doing so, if it desired, and as to those whose opinions it wished to have expressed upon the subject of which of the two places should be the county site, it clearly had the right to designate them, without reference to whether they were qualified electors under the Constitution or electors at all. In the language of Chief Justice WALKER, in *Ex parte Hill*, 40 Ala. 121: "The validity of a statute can never depend upon the antecedent consultation of the people by the legislature, nor upon the affording to them an opportunity to express their sentiments through petitions. The removal of the court house of a county, and its permanent location, is indisputably a permissible exercise of legislative authority. This authority it may exercise without consulting the people of the county, through the ballot, or otherwise; and if it chooses to select two places, and leave the choice between them to popular vote, it is the manifestation of a deference to public opinion, which is not demanded by the Constitution." If it is not demanded by the Constitution, then no elector who derives his right of franchise from the provisions of the Constitution, can complain that his right of suffrage is abridged or otherwise impaired by the act which does not afford him the opportunity to express his choice. He was not invited by the legislature to consult with it, and he cannot force his advice or opinion upon it without its consent. It is a matter which concerns only those whom the legisla-

ture voluntarily invited to assist it in making the choice. The legislature by adopting the method of ascertaining the choice, by ballot, of those whom it desired to consult, cannot be held to be bound to include every person who may be entitled to vote at a popular election under the Constitution or to exclude those whose advice it sought, from expressing their choice, because excluded by the Constitution from the exercise of the electoral franchise at a popular election. To hold otherwise, would be to destroy the plenary, and otherwise unlimited and unrestricted authority of the legislature; to fetter and handicap it in dealing with a matter, forsooth, because it required the choice by ballot, when it was not required to consult any one and when it was clearly within its competency to provide any method it sees proper to adopt for a manifestation of the sentiment of those persons it desires to consult. The contention of appellant would destroy the right of the General Assembly to submit any matter to the choice of the people by ballot, except to those persons who are qualified electors under the constitution, and, even to a portion, who do not constitute the entire voting population of a county. In other words, the electors of a beat or a number of beats could not be consulted by ballot. Under this rule all laws providing for local option, stock districts, etc., depending upon a vote of a majority of the electors of the district, would be invalid, notwithstanding there is no constitutional limitation upon the right of the legislature to submit these matters to the freeholders or any other persons residing in the district to be affected by the law—a right which has often been exercised and recognized as legitimate enactments.

Under the Constitution of 1819, which was in force until the adoption of the Constitution of 1865, every white male person of the age of twenty-one years or upwards, who was a citizen of the United States and shall have resided in this State one year next preceding an election and the last three months within the county, city or town, in which he offered to vote, was a qualified elector, etc. While this constitutional provision was in force, the act of the legislature, which by its several sections provided that before the corporation of

the city of Mobile should be entitled to levy the special tax provided in the act, an election should be held in said city at which none should be allowed to vote, except the owners of *freehold* estates in said city or tenants under lease for a term of five years and upwards and guardians who represented estates of wards, and required the concurrence of three-fifths of the votes polled, in favor of the tax, was passed, and its constitutionality assailed and upheld in the case of *Stein v. The Mayor et al.,* 24 Ala. 591, 612, 613. See also *Gibbons v. Mobile,* 36 Ala. 410.

It is clear to our minds that these objections are not well founded.—*Ex parte Hill,* 40 Ala. 121; *Clarke v. Jack,* 60 Ala. 271; *Leigh v. The State,* 69 Ala. 261; *Moulton v. Reid,* 54 Ala. 320; *McGraw v. County Commissioners of Greene County,* 87 Ala. 407; *Stanfil v. Court of County Rev. of Dallas County,* 80 Ala. 287; 6 Am. & Eng. Ency. Law (2d. ed.) pp. 1024, 1025 and notes; *Mobley v. Police Jury,* 41 La. Ann. 821; *Bew v. The State,* 71 Miss. 1; *Plummer v. Yost,* 144 Ill. 68.

The numerous cases cited in appellant's brief to sustain his contention, in seeming conflict with the views we here express, are based upon constitutional limitations of the authority of the legislature of those States to order a removal or a selection of a county site without first submitting the question of removal or selection to the electors of the county. The case of *Gandy v. The State,* in 82 Ala. 61, is not in conflict with what we have said. All that was held in that case, upon the point under consideration, was that the general penal statute was broad enough in its language to embrace any election held in this State, whether under the general or a special law. The election may be a legal one under a special law authorizing it, there being no constitutional inhibition against the passage of such a law, although it is not such an election as is contemplated by Art. VIII of the Constitution.

The remaining question is the one raised by the objection to the title of the act. It will be well to observe, before entering upon a consideration of this question, that the general statutes providing for and regulating elections apply only to elections of public officers and not to elections to be held of the character of

the one provided by the act under consideration.—§§ 1556 to 1703 of Code; *Clarke v. Jack, supra; Leigh v. The State, supra.* Also to note that the electors qualified by the act to vote in the election to be held under it, are also qualified electors under the Constitution and general laws. The point taken is that the act excludes certain persons qualified under the Constitution and general statutes to vote in popular elections. We have not, then, the case where the effect of the act is broader than its title, but, according to appellant's contention, a case where the provisions of the act are narrower than the ordinarily accepted meaning of some of the words in the title.

It cannot be said that the title contains more than one subject. For it needs no argument to show that the words "of the qualified electors of said county" when read in connection with the words which precede them, "to provide for the permanent location of the county site of Calhoun county by a vote" are germane to the subject expressed and are expressive of a part of the means to be employed to a full accomplishment of the purposes sought, to wit: "To provide for the permanent location of the county site of Calhoun county." As said in *State v. Street*, 117 Ala. 208, and quoted approvingly in *A. G. S. R. R. Co. v. Reed*, 124 Ala. 253; 27 So. Rep. 10, "When the title of an act expresses but one general subject, and all its provisions are allied to the subject expressed or, as is usually said, germane or cognate to it, all the purposes of the limitation are satisfied. This is the real test in each particular case: When the title expresses one general subject, however broad and comprehensive the subject may be, whether the act includes provisions which by no fair intendment can be considered as having connection or relation to the subject expressed." Or, as said in *Ex parte Pollard*, 40 Ala. 99, "The question must always be, whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom from all nice verbal criticism."

[State *ex rel.* Porter v. Crook, Judge, &c.]

But it is said that we cannot look to the language employed in the body of the act to ascertain the meaning of the words employed in the title. The contention suggests these questions: How, in any case, could the court ever determine that the act contains more than one subject, where only one is expressed in the title? How would the court ever determine that any foreign matter had been injected into the body of the act, incongruous to the subject expressed in the title? What process or means is to be resorted to in determining whether a matter in an act is germane to the general subject expressed in its title? In truth, a comparison of the provisions of the act and the title, is the only way by which these questions can be solved. Indeed, should the title contain two subjects and the body of the act only one, that which is expressed in the title, but not contained in the law may be rejected as surplusage.—*Judson v. The City of Bessemer,* 87 Ala. 242; *Gandy v. The State,* 86 Ala. 20; *Thomas v. The State,* 124 Ala. 48. An examination of the body of the act and the title must be made together, the one with reference to the other, for the purpose of determining the variance between them in order to be apprised as to whether the title is deceptive. *Non constat,* the provisions of the act may follow to the letter all inferences to be deduced from the language of the title in the minutest detail.

But to go back to the position contended for in this case, which, in its last analysis, is, that the words "qualified electors" as used in the title must be held to be referable to those persons who are electors under the Constitution and statutes of the State; that this is the sense in which they would be understood to be used by the members of the General Assembly when the title to the act is read, and therefore the General Assembly and the public were misled by those words into the belief that the bill or act provided that all persons residing in Calhoun county entitled under the Constitution and general laws to vote would be permitted to do so, whereas it excluded a certain class of them by the system of registration, etc., provided for in the act. If they stood alone they would mean "persons who are legally qualified to vote."—Bouv. Law Dic. 800. And

doubtless if they were used in connection with the subject matter to which the Constitution and the statutes at large regulating the right of suffrage are applicable, the contention would be sound. But they are not used in connection with a subject matter as we have shown with which Art. VIII of the Constitution has anything to do. They are distinctly, unqualifiedly and inseparably associated with the subject of the location of a county site for Calhoun county, the subject matter of the enactment over which the General Assembly, as we have shown, had the right to deal without restriction or limitation and the unqualified right to provide the qualifications of all persons who should by the act be permitted to vote at the election to be held under it. They must be construed in connection with the language with which they are associated. The entire language of the title of the act must be considered and taken into consideration when we undertake the interpretation of these words. When construed in connection with the subject with which they are associated and the unlimited authority of the General Assembly over that subject, and bearing in mind that the Constitution and the statutes conferring and regulating the electoral franchise in popular elections have no application to an election to be held for the location of a county site, the words "qualified electors" in the title, must be referable only to those who are qualified by the provisions of the act.

Affirmed.

McCLELLAN, C. J., and HARALSON, J., dissenting on the last point.