HENDERSON *v.* BOARD OF ELECTION COMMISSIONERS OF
THE CITY OF SAGINAW.

1. CONSTITUTIONAL LAW — ELECTIONS — VOTING MACHINE — CHAL-
LENGED VOTES.

   Act No. 214, Pub. Acts 1909, regulating the use of voting
   machines at elections, is not unconstitutional in providing
   that the votes of challenged persons must be accepted after
   the voters take the required oath.

2. SAME—ARREST OF FRAUDULENT VOTER.

   If the provisions of the statute for the arrest of unqualified
   voters should be held unconstitutional, the remainder of the
   act would not be affected.

3. SAME—ELECTIONS.

   The provisions of the law provide a check upon fraudulent
   voting.

4. SAME.

   Failure of the statute to provide for a method of distinguish-
   ing challenged votes does not invalidate the law.

5. SAME—STATUTES—ELECTIONS—PREVIOUS LAW.

   The provisions of 1 Comp. Laws, §§ 3720, 3721, for the identifi-
   cation of challenged ballots remain unrepealed, but votes by
   the machine cannot be identified under any provisions of the
   statute.

6. SAME—WORDS AND PHRASES—VOTE BY BALLOT.

   A vote by voting machine is a proper vote by ballot.[1]

7. CERTIORARI — APPEAL AND ERROR — QUESTIONS REVIEWABLE —
MANDAMUS.

   An order and finding of the circuit court on the facts in man-
   damus proceedings is conclusive on review in the Supreme
   Court.

8. CONSTITUTIONAL LAW—VOTING MACHINES—RECORDING VOTE.

   No constitutional requirement confers on a voter the right to
   see that the machine correctly registers his vote.

Certiorari to Saginaw; Gage (William G.), J.   Sub-

---

[1]As to use of voting machine as violation of constitutional re-
quirement that all elections shall be by ballot, see note to *State, ex
rel. Karlinger,* v. *Board of State Deputy Sup'rs of Elections* (Ohio),
24 L. R. A. (N. S.) 188.

mitted February 23, 1910.  (Calendar No. 23,860.)  Decided March 1, 1910.

Mandamus by Edwin D. Henderson to compel the board of election commissioners of the city of Saginaw to provide paper ballots for use at an election.  An order denying the writ is reviewed by relator on writ of certiorari.  Affirmed.

*Thomas G. Baillie* (*P. J. M. Hally*, of counsel), for relator.

*John F. O'Keefe*, City Attorney (*William L. Carpenter* and *Frank Keiper*, of counsel), for respondent.

HOOKER, J.  The relator, a resident elector and taxpayer of Saginaw, in anticipation of a special election, which had been called for the purpose of taking the vote of the electors of the city upon a bonding proposition, petitioned the board of election commissioners, asking them to provide for the use at said election of printed or paper ballots, in place of voting machines owned by the city, and the request was refused.  He then applied to the circuit court for a mandamus to compel such action, and upon a hearing the writ was denied.  The case is in this court upon certiorari.

Counsel for relator say that there are two questions of law in the case:  *First*, whether section 11, Act No. 214, Pub. Acts 1909, is constitutional; *second*, whether a vote by this machine is a vote by ballot.  The section in question provides:

" When the right of any person offering to vote is challenged the inspector of election shall tender to him such of the oath required by the election law of this State as he may claim to contain the grounds of his qualifications to vote.  And if the voter take such oath, he must be allowed to cast his vote upon the machine.  If the challenge is not withdrawn, the inspectors of election shall write opposite the name of such voter in the registration book, the word ' challenged,' and if such voter then enters the machine to vote, the election officer shall write the word ' sworn ' opposite the voter's name in the pollbook.  If

sufficient evidence is produced by any challenger, or elector, who will make affidavit on blanks provided therefor, that he believes such voter is not a qualified voter, giving the reasons for same; or if such voter is known to the inspectors of election, not to be a qualified voter, they shall immediately cause the arrest of such voter, and upon conviction such voter shall be deemed guilty of a felony, punishable as provided in section 153 of the general election laws."

Counsel make the argument that said section gives the right to vote to persons not constitutional electors, because it requires that any one who tenders a vote must be allowed to use the machine, provided he shall take the statutory oath. They also urge that the provision requiring the arrest of such persons in certain cases is in violation of the Constitution. The first provision is not peculiar to laws permitting the use of voting machines. For many years the law has required the acceptance of challenged votes, provided the persons offering them should take a similar oath, and we doubt if there is a State in the union where similar provisions have not been in force. There is no known way of preventing persons not electors from offering votes. If registered, the vote must be accepted, unless challenged. It might be said that such laws are unconstitutional for the same reason. All of these laws, as well as section 11 under consideration, are passed for the purpose of preserving the purity of elections, and the argument that they result in impurity, fraud, and abuse of the elective franchise seems to us unsound. These provisions provide some check upon the practice of fraudulent voting. They do not facilitate, but have a tendency to check, the practice, and to a degree tend to the purity of elections. So far as the other objection to this section is concerned, we think it unnecessary to enter upon a discussion of the immunity of citizens from arrest, or the necessary formalities to warrant arrests. It is sufficient to say that, should we be forced to hold that the provisions for arrest are not within the constitutional requirements, we might reasonably hold that the remainder of the section and act could, and should,

be allowed to stand, under the well-settled rule in such cases.

An argument in support of the unconstitutionality of this section is made upon the fact that no method is provided by which a vote illegally cast can be identified, as is the case under the existing law providing for the use of paper ballots. If this is a valid objection to the section, it must also be true that many former acts were unconstitutional for the same reason. The practice of marking challenged ballots has not always prevailed, and in fact earlier laws have provided for the destruction of ballots. We are not aware that there is any constitutional requirement that a way shall be provided for the identification of all unlawful votes, or the preservation of the evidence, if detected, and we know of no authority which justifies the conclusion that, having once attempted to provide for the identification of such votes, the legislature cannot pass a valid election law that shall omit such provisions. The challenge is no test of the electorship of the person offering a vote. Electors may be challenged, and persons not electors may vote without being challenged, and the wisdom of the practice of marking challenged ballots is a question of expediency, which is for the consideration of the legislature. Such designation is a matter of right, neither to the candidates, the challenger, nor the person challenged. Hence the omission does not make the act unconstitutional. We think, however, that the legislature did not at first intend to dispense with the provision for the identification of challenged votes, which is provided for in 1 Comp. Laws, §§ 3720, 3721, where ordinary ballots are used. Those sections were in force when the voting machine law of 1897 was passed (Act No. 61, Pub. Acts 1897, 1 Comp. Laws, §§ 3750–3758), and section 9 of that act provides:

"All election laws not incompatible with this act are continued in full force and effect."

While the act of 1897 did not specifically provide for such designation it did provide, in section 5:

"An ordinary ballot box shall be provided for use in each voting precinct, wherein shall be cast duly authorized ballots relating to any question or matter not provided for by the voting machine, if any, and such votes shall be counted and returns made as provided by existing laws." 1 Comp. Laws, § 3754.

Act No. 234, Pub. Acts 1903, provided a way for voting irregular ballots to the voting of which the machines might not be adapted. If it be thought that these are not sufficiently specific, section 17, added by Act No. 70, Pub. Acts 1907, is aimed at this subject, for it indicates the legislative understanding that the requirement of section 3720 was not to be dispensed with when the voting machine should be used, and points out the method to be pursued.

" When the right of any person offering to vote has been challenged, the inspectors of election shall tender to him such of the oaths required by the election laws of the State, as he may claim to contain the grounds of his qualification to vote. If such person, so challenged, will take either of the oaths provided by law his vote shall be received, and he shall have the right to cast a ballot in the manner provided in section eleven of this act for voting an irregular ballot, or in the ballot box provided in section five of act sixty-one, Public Acts of eighteen hundred ninety-seven, for voting on any question or matter not provided for by the voting machine: *Provided,* The ballot so cast shall comply with the provisions of sections three thousand seven hundred twenty and three thousand seven hundred twenty-one of the Compiled Laws of eighteen hundred ninety-seven.

" This act is ordered to take immediate effect.

"Approved April 30, 1907."

But sections 11, 12, Act No. 214, Pub. Acts 1909, contain provisions inconsistent with the identification of challenged votes when voting machines are used, as the former requires the board to allow a challenged voter to vote on the machine upon taking the statutory oath, and the latter excludes an irregular ballot in such a case. We must conclude, therefore, that the requirement of identification was intentionally dropped in the law of 1909, and is not now permitted when voting is by machine.

We have already decided that a vote by voting machine is a vote by ballot. See *City of Detroit* v. *Election Inspectors*, 139 Mich. 548 (102 N. W. 1029, 69 L. R. A. 184, 111 Am. St. Rep. 430); *Elwell* v. *Comstock*, 99 Minn. 261 (109 N. W. 698, 7 L. R. A. [N. S.] 621); 11 Current Law, p. 1177, note. It is said that the decision in that case was limited by the assumption that:

"The voting machines in question will, if used, insure to the elector proper instruction in the use of the machines, absolute secrecy in voting, opportunity to vote for any person or candidate of his choice for any office to be filled at a particular election, a knowledge that he has voted, a correct record of the vote or votes, and a public and correct declaration of the total result of the election, and the recording and preservation of such result by officers chosen and sworn for that purpose."

And it is said that the testimony taken upon issues framed in this case warrants no such conclusion. Apparently counsel expect that we will review the findings of the circuit court upon these questions, and this, too, on what they state to be "certain portions of the testimony." This is not the practice in certiorari. We must presume that the facts which counsel say were assumed in the former case are properly found in this case.

We are of the opinion, also, that the fact that the voter cannot have visual evidence, at the time of using the machine, that it correctly records and counts the ballot which he votes, does not preclude the use of this machine. We know of no constitutional provision that requires that a voter shall have such knowledge, even when a paper ballot is used.

The order is affirmed, with costs against the relator.

MONTGOMERY, C. J., and OSTRANDER, BLAIR, and STONE, JJ., concurred.