MAURICE G. LYNN and HAROLD H. SIMMS, Plaintiffs, *v.* H. ALDEN NICHOLS, as Board of Elections of Monroe County; JAMES L. HOTCHKISS, Chairman of the Republican County Committee of Monroe County; the BOARD OF SUPERVISORS OF MONROE COUNTY, NEW YORK, and A. M. CHAPMAN, Monroe County Treasurer, Defendants.

Supreme Court, Monroe Special Term, January, 1924.

Elections — voting machines — use of voting machines does not violate State Constitution, art. I, §§ 1 and 5 — Election Law, § 50, providing for single commissioner of election in Monroe county not a private or local bill within meaning of Constitution, art. III, § 18 — motion for judgment on pleadings dismissing complaint for failure to state cause of action granted — Rules of Civil Practice, rule 106.

The use of voting machines neither violates the constitutional provision (State Const. art. I, § 1) which guarantees to every elector the right to cast his vote without unnecessary discrimination against him as to the manner of casting his vote; nor the provisions of article I, section 5, of the Constitution which guarantees elections by secret ballot.

Section 50 of the Election Law, which provides for a single commissioner of election in Monroe county, concerns the whole state as regards its general elections, and is not a private or local bill within the meaning of section 18 of article III of the Constitution of the state.

A complaint praying for various kinds of relief on the ground that section 50 of the Election Law is unconstitutional and void and that the use of voting machines by the county of Monroe violates the Constitution of the state and is illegal,

considered, and held to contain no allegations of fact showing inaccuracy or defect in the working, or fraud or possibility of fraud in the operation of said voting machines, and no claim or suggestion being made of scheme or theory of manipulation or adjustment by which their integrity has been or could be defeated or impaired, a motion under rule 106 of the Rules of Civil Practice, for judgment dismissing the complaint, will be granted upon the ground that it fails to state a cause of action.

MOTION for judgment dismissing complaint.

*William W. Armstrong* and *George Y. Webster,* for defendants and motion.

*Ralph B. Ingalsbe,* for plaintiffs, opposed.

THOMPSON, J. The test to which this complaint must be put is found in section 241 of the Civil Practice Act which reads: " Every pleading shall contain a plain and concise statement of the material facts, without unnecessary repetition, on which the party pleading relies, but not the evidence by which they are to be proved;" and rule 106 of the Rules of Civil Practice, which says: " Within twenty days after the service of the complaint, the defendant may serve notice of motion for judgment dismissing the complaint, or one or more causes of action stated therein, where it appears on the face thereof: * * * That the complaint does not state facts sufficient to constitute a cause of action."

The complaint asks for various kinds of relief on the ground that section 50 of the Election Law, which provides for a single commissioner of elections in Monroe county, violates the Constitution and is wholly void; and that the use of voting machines by the county of Monroe violates the Constitution and is illegal.

Plaintiffs claim the use of the voting machine is in violation of article I, section 1, of the Constitution which reads: " No member of the State shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

As applied to the franchise, this constitutional provision guarantees to every elector the right to cast his vote with equal facility to that afforded to other voters, that is, without " unnecessary discrimination against him, as to the manner of casting his vote." *Burke* v. *Terry,* 203 N. Y. 293, 296; 20 C. J. 62; 6 R. C. L. 287.

The use of the voting machine is also challenged as being opposed to the provisions of article I, section 5, of the Constitution, which guarantees elections by secret ballot.

Where then does the complaint allege facts showing discrimination or possibility of discrimination against these plaintiffs, " as to the manner of casting their votes " by the use of the ballot machines,

or that they are or can be deprived of their right to cast, and have properly and correctly counted, a secret ballot? Let it be said that there is a total lack here of any such a showing. The pleading contains no allegations of fact showing inaccuracy or defect in the working, or fraud or possibility of fraud in the operation of these machines; nor is there claim or suggestion of scheme or theory of manipulation or adjustment by which their integrity has been or could be defeated or impaired. The provisions of the Election Law with reference to the use of voting machines amply, effectively and securely provide adequate opportunity and means for every voter to vote in secret, with the assurance that such ballot will be registered and counted as cast. The Constitution was expressly amended so that these devices might be used (Const. art. 2, § 5), and their construction, operation and use, under the safeguards the legislature has provided, has its full warrant. "The registry of votes by a voting machine is simply a substitute for the canvass of written votes." *People ex rel. Deister* v. *Wintermute,* 194 N. Y. 99, 104; 20 C. J. 175, 176.

The constitutionality of section 50 is also challenged on the ground that it violates section 18 of article III in that it is a " private and local bill * * * providing for election of members of boards of supervisors; and * * * the opening and conducting of elections or designating places of voting."

Section 50 does not provide for election of members of boards of supervisors; they are never elected as such, but hold that office and perform its duties under the general law, and by force of their election as supervisors of separate towns, cities or wards. *People ex rel. Clancy* v. *Supervisors,* 139 N. Y. 524, 527.

Nor does it provide for the opening and conducting of elections or designating places of voting; these subjects being completely and solely covered by article VIII and section 66 of the Election Law, respectively. " It deals only with one subject, namely, a commissioner of elections for Niagara (Monroe) county, in connection with the Election Law," says Justice Foote in the Niagara County case, but " it is a law which concerns the whole State as regards its general elections." *Vroman* v. *Fish,* 181 App. Div. 502, 506.

A local or private law is one that rests on a false or deficient classification; which creates preference and establishes inequality; which applies to persons, things or places possessed of certain qualities or situations, and excludes from its effect other persons, things or places that are not dissimilar in these respects. *State, Clark et al.* v. *City of Elizabeth,* 42 N. J. Law, 357.

Neither in design or effect does this law transgress these principles. We hold, therefore, that the section is not a private or local bill

within the meaning of the Constitution. *Matter of Ahern* v. *Elder*, 195 N. Y. 493, 501; *People ex rel. Clauson* v. *Newburgh & S. P. R. Co.*, 86 id. 1.

On submission plaintiffs earnestly contend that the section under examination is singularly vicious in that it puts the whole election machinery and equipment of the county into the hands of a single person, and they urge that the statute in such respect is void, and should be so declared in this action; that the office of election commissioner in Monroe county should be declared vacant; and that defendant board of supervisors, under other provisions of the Election Law, should be required to appoint a bi-partisan election board, socalled. To this it must be said that there is no warrant in the Constitution or the law of the state for such action upon the part of any court.

Section 6 of article II of the Constitution, providing for bi-partisan election officers, has no application to election commissioners, but only to the officers of election who are charged with the duty of " registering voters, or of distributing ballots at the polls to voters, or of receiving, recording or counting ballots at elections; " as it expressly says.

" Its [section 6, article 2 of the Constitution] design was to provide for *local* election boards * * * and has no relation whatever to boards of election created for the purpose of performing in large cities the duties, with some additions, which are generally imposed upon county clerks and similar officers. * * * the board of elections has nothing to do with the discharge of the duties which are prescribed for inspectors of election, ballot clerks, etc., and which are referred to in the constitutional provision here under consideration." *Matter of Kane* v. *Gaynor*, 144 App. Div. 196; affd., 202 N. Y. 615.

Moreover, the act here examined, in terms, withholds all such powers from the election commissioner.

It is also asserted that this statute is void in its provision for the appointment of the board of elections by a majority of the surrogate, county judge and special county judge of the county. It seems that members of boards of elections are local, therefore, county officers, rather than state, under the definition of the Public Officers Law. *People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405, 408.

The legislature had ample authority for the act in this respect in section 2 of article X of the Constitution. That section bears the caption: " Appointment or election of officers not provided for by this Constitution," and enacts that all such county officers shall be elected, or appointed by the boards of supervisors, or

Supreme Court, January, 1924. [Vol. 122

other county authorities, as the legislature shall direct; that all such city, town and village officers shall be elected, or appointed by such authorities as the legislature shall designate for that purpose, and that all other such officers shall be elected by the people, or appointed as the legislature may direct.

" Within the meaning of article 10, section 2, of the Constitution the term ' county officer ' would comprehend all those who are appointed or elected for a county, and who must reside and perform the duties of their offices within their counties." *Matter of Whiting*, 2 Barb. 513, 517; 1 Edm. Sel. Cas. 498, 500.

" Although there is some conflict, the better rule would seem to be that in the absence of some constitutional provision the power to appoint may also, if the statutes of the legislature so provide, be exercised for any class of officers by any of the three governmental departments." 29 Cyc. 1369, citing *Heister* v. *Metropolitan Board of Health*, 37 N. Y. 661, and *People* v. *Draper*, 15 id. 532. 22 R. C. L. 425.

In passing let it be observed that this feature in the Niagara county law was noted without comment in *Vroman* v. *Fish*, *supra*, and that the Court of Appeals recognized the validity of a statute empowering county judges to make similar appointments, by virtue of this section of the Constitution, in *People ex rel. Bush* v. *Houghton*, 182 N. Y. 301. It is also significant that the Election Law in general vests such appointing power in boards of supervisors and that it is upon this theory that relief is asked here against the board of supervisors, defendants. Const. art. III, § 27; Election Law, § 30.

Because this court is bound by the decision of the Appellate Division, fourth department, in the Niagara County case which holds that a section of the Election Law, identical with the one here considered, does not offend section 16 of article III of the Constitution, that question is not discussed.

And it is so obvious that section 27 of article III of the Constitution, which authorizes the legislature to confer upon boards of supervisors such further powers of local legislation and administration as it may deem expedient, has no relation to or bearing upon this act, any consideration of its provisions is also omitted.

Coming then to the close of an examination of the many questions involved here, and constrained by the rules the law prescribes for such cases, we find this statute valid and in no sense a violation of or in conflict with the Constitution.

" Every act of the legislature is presumed to be in harmony with the Constitution, unless the contrary clearly appears." *Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377.

" It is the duty of the courts to uphold a statute enacted by the Legislature as constitutional if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law." *People* v. *American Socialist Society*, 202 App. Div. 640.

" An act passed by the legislature is not to be declared unconstitutional unless so inconsistent with the Constitution that it cannot be enforced without a violation thereof." *Matter of Adams* v. *Flanagan*, 201 App. Div. 735, 736.

" To justify a court in pronouncing a legislative act unconstitutional, or a provision of a state Constitution to be in contravention of the Constitution of the United States, the case must be so clear as to be free from doubt, and the conflict of the statute with the Constitution must be irreconcilable. Therefore in no doubtful case will the judiciary pronounce a legislative act to be contrary to the Constitution. To doubt the constitutionality of a law is to resolve the doubt in favor of its validity." 6 R. C. L. 75, 76.

So we find that the complaint fails to state a cause of action. In so far as it may be held that any defendant is a proper party under this ruling, it appears that the joining of defendant Hotchkiss, as chairman of the county committee, is authorized by section 211 of the Civil Practice Act, which provides that " all persons may be joined as defendants against whom the right to any relief is alleged to exist."

In such a connection the word " alleged " must be taken in its usual significance of meaning " claimed." 1 Words & Phrases, 340.

Ordered accordingly.