In the Matter of the Application of JACOB GERLING for a Peremptory Mandamus Order against H. ALDEN NICHOLS, Commissioner of Elections in and for the County of Monroe.

Supreme Court, Monroe Special Term, October 22, 1924.

Elections — voting machines — proceeding to compel use in Monroe county of paper ballots rather than voting machines at general election — allegation that voting machines do not afford voter opportunity to split his vote for presidential electors — claim also made that secrecy of ballot is not maintained by use of machines — use of voting machines permissible within meaning of State Constitution, art. 2, § 5 — use of voting machines authorized by Election Law, § 243 — person not deprived of constitutional rights where vote is void through his own carelessness — rights of electors adequately preserved by use of voting machines.

Section 5 of article 2 of the State Constitution providing that an election may be had by such other method (other than ballot) as may be prescribed by law, provided that secrecy in voting be preserved, permits the use of voting machines at elections, if found practicable.

Supreme Court, October, 1924.  [Vol. 123

Accordingly, petitioner's application for a peremptory order of mandamus requiring the use in Monroe county of paper ballots instead of voting machines at the 1924 general election will be denied, since, pursuant to the authority granted by the State Constitution, the Legislature has authorized the use of voting machines by section 243 of the Election Law.

The petitioner's claim that voting machines do not afford the voter an opportunity to split his vote for presidential electors and destroys the secrecy of the ballot is unwarranted, where it appears that the voting machines are so prepared as to afford such facilities for voting that all the rights of the electors are adequately and safely preserved.

Moreover, it cannot be said that a person is unlawfully deprived of his constitutional rights when, through his own fault or negligence, he so casts his vote that it may not be properly registered or counted.

APPLICATION for a peremptory order of mandamus requiring the defendant to furnish paper ballots instead of voting machines for use at the 1924 general election.

*Albert C. Truesdale,* for the petitioner.

*George Y. Webster,* for the defendant.

CUNNINGHAM, J. The petitioner seeks in this proceeding to require the use in Monroe county of paper ballots instead of voting machines at the general election to be held in November.

The specific grounds upon which petitioner seeks relief are that the voting machines do not afford the voter an opportunity to split his vote for presidential electors and that when a voter attempts to so split, the vote cast by him is revealed to any person subsequently entering the machine and thus secrecy is destroyed.

The Constitution of 1895, article 2, section 5, says that an election may be " by such other method [other than ballot] as may be prescribed by law, provided that secrecy in voting be preserved." This provision was added to the Constitution " solely to enable the substitution of voting machines, if found practicable." *People ex rel. Deister* v. *Wintermute,* 194 N. Y. 99, 104.

In the same case the Court of Appeals, at page 108, held that the use of the voting machine did not deprive an elector of his rights, saying, " but any method of holding an election which would deprive the electors free from fault or personal misfortune of the right of casting their ballots and having effect given to the votes so cast would plainly be unconstitutional. * * * As already said, we think that the use of voting machines does not necessarily impair those rights." In a recent case in this district, Mr. Justice Thompson, after an exhaustive review of the authorities, decided that the voting machine was so prepared as to adequately protect the right of the voter to cast his vote in secrecy and have it properly counted. *Lynn* v. *Nichols,* 122 Misc. Rep. 170; affd., 210 App. Div. 812.

Pursuant to the authority granted by the Constitution the legislature has authorized the use of voting machines when adopted by the local authorities of cities, towns and villages. Election Law, § 243. The law provides that before delivery to the polling places the custodian of voting machines, under the direction of the commissioner of elections, in the presence of the representatives of each of the two major political parties, shall " see that the machines are properly prepared and that all registering counters are set at zero (000)." The machines must then be locked so that the voting machinery cannot be seen and the lock must be sealed. Election Law, § 251. On election morning, before the opening of the polls, the inspectors of elections are required to open the doors concealing the counters on the voting machines, and each inspector is required to " carefully examine every counter and see that it registers zero." The watchers of all of the different parties are also permitted to examine them. Election Law, § 256.

It is required that the voting machines give an opportunity to an elector to vote a ticket for presidential electors containing the " names of persons in nomination by different parties, or partially of names of persons so in nomination and partially of names of persons not in nomination, or wholly of names of persons not in nomination by any party." Election Law, § 260.

While it may seem unreasonable that the voter should want to split his ballot among two or more candidates for the office of president, thus rendering his vote of no effect upon the result, still this right is given to him by law and the voting machine must afford him facility for exercising that privilege.

The voting machines contain a number of slips with the names of the presidential electors of all the parties, each having thereon the electors of one party. A voter may take one of these slips and cross out the names of the electors for whom he does not desire to vote and write in the names of others for whom he wishes to vote. There is also a blank slip upon which he may write an entirely new set of electors. He may then open a slot in the machine and paste this slip upon the roll at that time exposed and if properly affixed the roll will, when the curtain is pushed back, carry the paster down below the slot and out of sight of the next voter. This roll must be examined by the inspectors and the votes thereon counted.

In the election of 1920 two voters in the city of Rochester took advantage of the opportunity offered them by the voting machines to split for presidential electors and the split votes thus cast were registered and counted without any difficulty.

A voting machine has been set up in the commissioner of

elections' office to be used for the instruction of voters. A number of those coming in for instruction have tried the experiment of splitting for presidential electors and the roll from the machine produced upon this hearing shows conclusively that a voter may cast a split vote for presidential electors. Of course, the voter must use care in preparing and affixing the slip or else he may lose his vote. However, a person is not unlawfully deprived of his constitutional rights when through his own fault or negligence he so casts his vote that it may not be properly registered or counted. *People ex rel. Deister* v. *Wintermute, supra,* 108.

It is true that under the method of voting by paper ballot many of the voters do not comply with the law and their votes are not counted. In New York county in the last gubernatorial election about two and one-half per cent of the votes cast for governor were blank or void and in Kings county about two per cent were blank or void. Recently, before me, a recount was had of ballots cast at a primary election in one district of Seneca county. The voters, in attempting to split for town committeemen, had so marked their ballots that over forty-five per cent of them were void. I am convinced that more voters who attempt to cast split ballots for presidential electors will be disfranchised in those districts in which paper ballots are used than will be the case in districts in which voting machines are used.

It seems to me that this also disposes of the question raised as to lack of secrecy. If a voter use care and intelligence in preparing and voting an irregular ballot for presidential electors, the slip will be carried down on the roll so that the manner in which he voted will not be disclosed to the person following him in the machine. A man voting by paper ballot who carelessly places a distinguishing mark upon his ballot has destroyed the secrecy of it, but assuredly that does not make such method of voting illegal. It is only by carelessness that an act of the voter in splitting upon the voting machine may be revealed. One method preserves secrecy as much as the other.

I am of the opinion that the voting machine affords such facilities for voting that all the rights of the electors of Monroe county are adequately and safely preserved.

As was said by Judge Gray in *People ex rel. Deister* v. *Wintermute, supra,* 113: " An approved mechanism is availed of to secure honesty, secrecy and exactness in the casting, counting and return of votes cast."

The motion is denied.