180 So. 695

**McCALL et al. v. AUTOMATIC VOTING MACH. CORPORATION et al.**

I Div. 992.

Supreme Court of Alabama.

Jan. 20, 1938.

Rehearing Denied April 21, 1938.

George A. Sossaman, of Mobile, for appellants.

Armbrecht, Twitty & Jackson and Albert J. Tully, all of Mobile, for appellees.

ANDERSON, Chief Justice.

Section 190 of the Constitution of 1901, so far as applicable to the issue involved in this case, says: "The Legislature shall pass laws not inconsistent with this Constitution to regulate and govern elections, [a] and *all such laws shall be uniform throughout the State;* and shall provide by law for the manner of holding elections and of ascertaining the result of the same, and shall provide general registration laws not inconsistent with the provisions of this article." (Italics supplied.)

It is manifest, therefore, that all laws to be enacted by the Legislature governing or relating to elections, especially to the manner of holding same and ascertaining the result, shall be uniform throughout the state. State ex rel. Austin v. Black, 224 Ala. 200, 139 So. 431, 434.

The Acts of 1935, p. 679, providing for the use of voting machines in any county, city, or town, upon the adoption of same by the county commissioners or board of revenue and to become effective in said subdivisions after the adoption thereof, authorizes a radical departure from our present election laws, thus enabling a single county or a group to break or destroy the constitutionally required uniformity of the election laws as to the manner of holding elections and ascertaining the result "throughout" the State, that is, "All the way from one end to the other of; in or to every part of; during the whole course or period of; in or to every part from one end to the other; everywhere." Webster's New International Dictionary; Mobile County v. Byrne, 218 Ala. 5, 117 So. 83.

Of course, the law may be a general one under the definition given by section 110 of the Constitution as interpreted by many of our decisions, in that every county may come within its influence without additional legislation and it may not have to operate in all of its parts uniformly, but there is a vital distinction between the requirements of section 110 and section 190. Hence the decisions dealing with section 110 are inapt when dealing with section 190. In other words, the law in question may be a general one under section 110, but, in order to conform to section 190, it must govern and have uniform application throughout the State eo instante and not leave it to the will of some governing board to put it into operation in a single or part of the counties.

It is suggested and argued by counsel for appellee that as the framers of the Constitution of 1901, while readopting section 5 of article 8 of the Constitution of 1875, added the words "and shall provide by law for the manner of holding elections and of ascertaining the result of the same," that the uniformity required by the previous sentence did not apply to the added words, that is, to the manner of holding elections and of ascertaining the result of same. This contention was refuted by the court in the opinion of Mr. Justice Thomas in the case of State ex rel. Austin v. Black, supra, wherein, it was said: "The added words to section 190, Constitution of 1901, 'shall provide by law for the manner of holding elections and of ascertaining the result of the same,' to the provisions of the former Constitution were in the nature of a constitutional definition or limitation upon the general provisions contained in section 5, article 8 of the Constitution of 1875. And thus were the words 'regulate and govern' defined by the makers of the Constitution as to the matter of substantive requirements for uniformity." Meaning, we repeat, that uniformity was not to be excluded, but was specially applicable to laws for the "manner of holding elections and of ascertaining the result of the same," and did not apply to the calling or fixation of the date of local elections and, we may add, the naming of the place or structure in which the elections were to be held as dealt with in the case of Lovejoy v. Beeson, 121 Ala. 605, 25 So. 599.

In the cases of State ex rel. Porter v. Crook, Judge, &c, 126 Ala. 600, 28 So. 745, and Ex parte Bud Owens, 148 Ala. 402, 42 So. 676, 8 L.R.A.,N.S., 888, 121 Am.St. Rep. 67, the court did not attempt an interpretation of section 5, article 8, of the Constitution of 1875 (section 190 of the Constitution of 1901), only to the extent of holding that it did not apply to the elections for the removal of county sites.

Nor is there anything in the case of Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845, contrary to the present holding, as a construction of section 190 was not involved and there was only a general reference to same in connection with other sections of the Constitution as to the general purpose of same.

We are, of course, aware that several States have adopted the voting machine as an instrumentality for holding elections and of declaring the result, and the laws providing for same have been upheld, but they were usually laws providing uniformity for elections or else there were no constitutional provisions identical with our section 190. Moreover, with all due respect for other courts, we must and will adhere to the imperative mandate of our own Constitution.

The voting machine in question was inspected by the trial court as well as this court, and whether or not it meets all the requirements of our Constitution if when legally adopted we are not now concerned, except to say that it produces a very different method for holding elections and ascertaining the result of same in Mobile County from the system prevailing in other parts of the State. True, other counties can come under the law, but, until they do, a mere conjecture, the elections cannot be uniform as required by section 190 of the Constitution.

The Douglass Act not operating uniformly throughout the State or not postponing the operation of same until every county in the State adopts the same under the local option feature, the present operation of same is repugnant to section 190 of the Constitution, and we need not pass upon the merits or qualifications of the machine until it is constitutionally adopted. "Sufficient unto the day is the evil thereof."

The act could probably be upheld by the interpolation of a proviso that it should not become effective in any county until adopted by the governing boards of all of the counties, but such an interpolation would do violence to the intention of the

present act as it evinces, both by the title and body, the purpose that it shall become effective in the counties when adopted without regard to the other counties.

We are, of course, aware of the elementary principle that, where the validity of a statute is assailed, and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it. When the constitutionality of a statute is questioned, it is the duty of the courts to adopt a construction that will bring it in harmony with the Constitution, if its language will permit, even though the construction which is adopted does not appear to be as natural as the other. State ex rel. Collman v. Pitts, Probate Judge, 160 Ala. 133, 49 So. 441, 686, 135 Am.St.Rep. 79. There are, however, limitations to the application of these principles, and the courts are not at liberty in order to sustain a statute to give it a forced construction or to *read into it and interpolate words which do not appear in the language enacted by the Legislature.* 6 R.C.L. p. 79, § 77.

There is also an obligatory duty of the courts, which are vested with the power to pass upon the constitutionality of statutes, to not overlook or disregard constitutional demands, which the judges are sworn to support, and therefore, when it is clear that a statute transgresses the authority vested in the Legislature by the Constitution, it is the duty of the courts to declare the act unconstitutional, and from this duty they cannot shirk without violating their oaths of office. 6 R.C.L. p. 72, § 69.

The Douglass Act being repugnant to section 190 of the Constitution of 1901, the trial court erred in upholding same and in the decree rendered granting the complainant relief, and the decree is reversed and one is here rendered dismissing the bill of complaint.

Reversed and rendered.

THOMAS, BOULDIN, and BROWN, JJ., concur.

GARDNER, FOSTER, and KNIGHT, JJ., dissent.

BOULDIN, Justice (concurring).

In my opinion the added provisions incorporated in section 190 by the framers of the Constitution of 1901 define and specify the laws to regulate and govern elections which the Legislature shall enact under the mandate of the same section requiring all such laws to be uniform throughout the state.

Elections in Alabama was the matter of first concern in that convention. This is history.

The qualification of voters was prescribed by self-executing provisions of the Constitution, uniform throughout the state. The manner of holding elections and ascertaining the result was not only left to the Legislature, but says section 190 the Legislature *shall* enact such laws, and this mandate is incorporated in the uniformity section of the Constitution.

The Constitution provided a temporary system for the registration of voters, uniform throughout the state. And, in like manner, declared in this uniformity section that the Legislature *shall* enact general registration laws effective after the temporary system ended, all in harmony with the new Constitution.

That the Douglass Act, Gen.Acts 1935, p. 679, undertakes to empower the governing body of one county to put into effect in such county a law essentially and substantially different from that prevailing in other counties with respect to the manner of holding elections and ascertaining the result, as declared in the main opinion, is quite obvious.

One illustration will suffice.

Under the prevailing law the managers of elections are required to keep a poll list showing the number and name of each voter, and to identify his ballot by a corresponding number thereon. By this means there is provided record evidence, official written evidence, whereby, on a contest of the election, it may be ascertained for what candidate or measure illegal votes, if any, have been cast. Sartain v. Shepherd, 173 Ala. 474, 55 So. 919.

Admittedly the machine method provided under the Douglass Act nowhere records any evidence as to how or for whom any voter cast his vote.

Thus one of the principal safeguards of existing law against fraudulent elections by illegal voting is absent in voting under the Douglass Law.

True, our laws look to the secrecy of the ballot, and provide safeguards to secure that right. But this does not prevent the use of the ballot and the poll list on a contest of the election. Sertain v. Shepherd, supra.

The protection of the voter from intimidation is no more sacred than the right to have his vote counted, and not nullified by illegal voting. The prostitution of the ballot by illegal voting is as destructive of democratic government as the sale and purchase of votes, or the coercion of voters.

The provision for numbering ballots, like many others in our election laws, are declared directory in the sense that a noncompliance on the part of election officers, while rendering them guilty of a misdemeanor, will not deprive the legal voter of the right to have his ballot counted on a contest. All this is expressive of a policy to give effect to the choice of the legal voters; that democratic government shall not fail because some people violate the law. Montgomery v. Henry, 144 Ala. 629, 39 So. 507, 1 L.R.A.,N.S., 656, 6 Ann.Cas. 965.

But any system which strikes down one of the chief safeguards for honest elections is not substantially the same as one which provides such safeguards.

This is no matter of mere form.

Other illustrations could be given.

To amend and modernize our Constitution is a function reserved to the people themselves. It is not a function of the Legislature or the courts.

THOMAS, J., concurs in the foregoing.

KNIGHT, Justice (dissenting).

Bill in equity filed by the Automatic Voting Machine Corporation, appellee here, against the respondents, as the governing body of Mobile County, seeking a declaratory judgment as to the validity of the Act of the Legislature of Alabama approved September 2, 1935, Acts 1935, p. 679 et seq., known as the Douglass Act.

The bill is sufficient in averment to invoke the jurisdiction of the court to determine the issue involved. Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25; Houston County v. Martin, 232 Ala. 511, 169 So. 13; Teal et al. v. Mixon, 233 Ala. 23, 169 So. 477.

It appears that the Board of Revenue and Road Commissioners of Mobile County, pursuant to the provisions of the Douglass Act, had passed a resolution whereby it declared that Mobile County elected to come under the provisions of said act, and had, accordingly, entered into a contract with appellee to deliver to the county not less than thirty nor more than fifty voting machines at a specified rental price, with an option on the part of the county to purchase the machines at a stipulated price for each machine.

By this contract the appellee was and is obligated to furnish the machines, and the county likewise obligated to take the same, dependent only upon the constitutionality of the act in question. The bill shows an actual controversy between the parties, and a justiciable issue.

The circuit court held the act in question constitutional, and from this judgment or decree the present appeal is prosecuted by the respondents.

The real question here presented is, Does the act in question violate any of the provisions of the State Constitution governing and regulating elections, and the manner of holding elections, and ascertaining the result of the same?

The right and power of the courts to determine whether enactments of the Legislature exceed constitutional limitations and are invalid has always been "considered a grave responsibility," and the courts are solemnly enjoined to approach constitutional questions with "great deliberation, exercising their power in this respect with the greatest possible caution, and with reluctance; and they should never declare a statute void, unless its invalidity is, in their judgment, beyond reasonable doubt." 6 R. C.L. § 71, pp. 72, 73, 74.

With the wisdom or policy of a statute, the court is not concerned. As well said by Chief Justice Anderson, in the case of State ex rel. Collman v. Pitts, 160 Ala. 133, 49 So. 441, 445, 686, 135 Am.St.Rep. 79: "The Legislature is the arbiter of the merit and wisdom of laws, and courts must construe them so as to carry out the intent of the Legislature, provided they can be so construed as to harmonize with the Constitution, and all doubt and intendment must be resolved in favor of their constitutionality."

And again, in Henry v. State, 218 Ala. 71, 117 So. 626, 631, it was observed: "The rule of construction is that, if there are two reasonable interpretations of a constitu-

tional provision, that will be adopted which will uphold legislation, although it may not seem the better construction."

The pertinent provision of section 190 of the State Constitution reads: "The Legislature shall pass laws not inconsistent with this Constitution to regulate and govern elections, [a] and all such laws shall be uniform throughout the State; and shall provide by law for the manner of holding elections and of ascertaining the result of the same, and shall provide general registration laws not inconsistent with the provisions of this article."

That the Douglass Act is a general law within the meaning of section 110 of the State Constitution we entertain no sort of doubt. A general law as defined by said section of the Constitution is "a law which applies to the whole State." Certain it is, the act applies to every county in the State which may desire to come within its provisions. That some may not elect to come within its provisions cannot serve to deprive it of its quality as a general law. It is a permissive statute, open to all counties.

In the case of State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679, 683, a case which has been often referred to approvingly by this court, it was held that a law, "which is general in its terms, and is in good faith so framed that all parts of the state may come within the circle of its operation, is a general law. And the fact that at the time of its passage there may be in the state certain localities where there are no objects for its present operation, or where there are special laws already in existence which must be repealed before the general law becomes operative therein, does not render it any the less a general law."

It is fully recognized that a law may be a general one, under the interpretation given section 110 of the Constitution, as declared in many decisions of this court, where all the counties of the State may come within its influence without additional legislation.

To hold that every law enacted as a general one, and which deals with state-wide questions, becomes local, because qualified and limited in some of its details to meet local requirements and conditions, would render it "practically impossible to pass general laws, as to schools, creating and regulating courts throughout the entire state, etc., and at the same time vary the minor details thereof, so as to meet the exigencies or differences of various localities confronted with different conditions. We could not regulate the schools of the state without making the law operate with *uniformity* to every school. There could be no school opened or closed at different hours in different localities, no difference whatever in management, control, or operation in the slightest detail, except by a local law, no general law regulating the pleading and practice in the courts of the state, unless it fixed the day for pleading, etc., the same in each county. Nor could there be a general jury law, unless it operated in its every detail and feature to every court and county in the state, regardless of local conditions." State ex rel. Collman v. Pitts, Probate Judge, 160 Ala. 133, 138, 49 So. 441, 444, 686, 135 Am.St.Rep. 79.

The Douglass Act, being by its terms applicable to the entire State, and to every county, which might elect to come under its provisions, is not obnoxious to section 110 of the Constitution.

We will now address ourselves to the contention made by appellants that the act is violative of section 190 of the Constitution, which requires that "such laws shall be uniform throughout the State."

In the first place, we take it, it was the purpose of this provision to preserve uniformity as to the fundamentals involved in elections, that is to say, registration and qualification of voters, secrecy of the ballot, and a reasonable and fair opportunity to cast one's vote.

As well said by Justice Thomas in the case of Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845, 854: "The provisions of our Constitution (sections 179, 189, 190) and of the statute are to preserve the untrammeled expression of the choice of the elector, to the end that no qualified elector be deprived of the privilege that is accorded by law to vote, and may freely and intelligently cast his or her vote under the Constitution and statutes." It was the safeguarding of this right that was in mind of the framers of the Constitution; and matters of detail, whether the ballot should be marked by pencil or pen, on paper, or whether the mark should be made by pulling a lever on a mechanical device was not in their thought. Nor did the justice have in mind any mere detail as to how the voter's choice should be registered, when he wrote the opinion

16

in the case of State ex rel. Austin **v.** Black, 224 Ala. 200, 139 So. 431.

In the case of Ex parte Bud Owens, 148 Ala. 402, 42 So. 676, 677, 8 L.R.A., N.S., 888, 121 Am.St.Rep. 67, decided by this court in 1906, section 190 of the Constitution came before the court for consideration, and it was there said of this section:

"It is next insisted that said act is violative of section 190 of our Constitution, which provides that 'the Legislature shall pass laws, not inconsistent with this Constitution, to regulate and govern elections, and all such laws shall be uniform throughout the state, and shall provide by law for the manner of holding elections and of ascertaining the result of the same.' This provision has reference particularly to the general election laws of the state; but, *conceding* that it applies to laws providing for elections *in the various counties,* this law makes provision for all of the counties *according to their several needs,* and in providing for so many counties, differently situated, it is necessary that they be *classified according to their several needs and conditions.* It would be manifestly unjust to provide for an election on the same terms and conditions in a county which had just paid large sums of money and assumed heavy obligations to build a courthouse and jail, as in a new county which had neither. *This principle* of *classification* has been so often *recognized* as not *impinging upon the principle* of the uniformity of laws that it is unnecessary to discuss it at length. *This act is not violative of section 190 of our Constitution.* Harwood v. Wentworth, 162 U.S. 547, 16 S.Ct. 890, 40 L. Ed. 1069; Bone v. State, 86 Ga. 108, 12 S.E. 205; People v. Haselwood, 116 Ill. 319, 6 N.E. 480; Bronson v. Oberlin, 41 Ohio St. 476, 52 Am.Rep. 90; People v. Henshaw, 76 Cal. 436, 18 P. 413." (Italics supplied.)

In the Constitution of the State of Iowa there is a provision of the State Constitution, section 30, article 3, which provides that the General Assembly shall not pass local or special laws for the incorporation of cities or towns. In such cases the Constitution provides the laws shall be *general* and of *uniform operation throughout the state,* and section 6, article 1, of that Constitution, provides that all laws of a *general nature* shall have uniform operation.

With the above provisions in the State Constitution, the Supreme Court of Iowa, in the case of Eckerson v. City of Des Moines et al., 137 Iowa 452, 115 N.W. 177, 187, held an act of the General Assembly of the State of Iowa, providing a special form of government for cities of 25,000 population or over, was not unconstitutional, because making an arbitrary classification, nor did the fact that it was possible, or even probable, that some one or more of the cities may not avail themselves of the provisions of the act granting special powers to the class to which they belonged, affect the uniform application of the law, if all who do accept it are to be governed alike. In so holding, the Supreme Court of Iowa said: "Addressing ourselves to the contention as last made in this connection, we find *no semblance of merit.* Assuming, for present purposes, that it was proper for the Legislature to provide that organization under the act should not obtain in any particular city falling within the class legislated upon except on popular vote of the electorate—a subject presently to be brought forward for consideration— still it must be said that the act is intended to operate uniformly upon all those cities which do avail themselves thereof, and under the doctrine of our cases cited foregoing this is sufficient. If all cities availing themselves of the act are to be governed alike, the law is *uniform.* [Italics supplied.] And this conclusion is not disturbed because, forsooth, it is possible, or even probable, that some one or more of the eligible cities may not avail themselves of the act."

In the case of State ex rel. Buford, Attorney General, v. Daniel, 87 Fla. 270, 99 So. 804, 809, it was held: *"Uniformity* of operation throughout the state does not require *universality* of operation throughout the state. The former relates to similarity of conditions affecting subjects or localities of the state that are appropriately classified. The latter relates to the whole and every part of the state." (Italics supplied.)

The Supreme Court of Georgia, in the case of Cooper et al. v. Rollins et al., 152 Ga. 588, 110 S.E. 726, 728, 20 A.L.R. 1105, in discussing the provision of the Georgia Constitution requiring a law to have uniform operation, observed: "Our state Constitution only requires a law to have uniform operation, and that means that it shall apply to all persons; matters,

or things which it is intended to affect. If it operates alike on all who come within the scope of its provisions, *constitutional uniformity* is secured. *Uniformity* does not mean *universality*. This constitutional provision is complied with when the law operates uniformly upon all persons who are brought within the relations and circumstances provided by it. Crovatt v. Mason, 101 Ga. 246, 28 S.E. 891, [893]."

The Supreme Court of Mississippi, in the case of State ex rel. Knox, Atty. Gen., v. Speakes et al., 144 Miss. 125, 109 So. 129, 132, in passing upon the question of what constitutes "a general and uniform" law, said: "The constitutional requirement that certain character of laws shall be general and uniform in their operation does not prevent a reasonable classification by the Legislature. A law is *general* in the sense of such a constitutional provision when it applies to and operates uniformly on all members of any class of *persons, places,* or *things* requiring legislation peculiar to the particular class dealt with by the law. A law is *general* and *uniform,* although it does not operate on every person in the state. It is general and uniform if it operates on every person who is brought within the classification and circumstances provided for by the law."

From R.C.L. vol. 25, § 66, p. 815, we excerpt the following statement of the author: "While many of the State Constitutions require that all laws of a general nature shall have a uniform operation, it is well settled that reasonable classifications in a legislative act are not inimical to constitutional provisions against the passage of private, local, or special laws, and that a law is general in the constitutional sense which applies to and operates *uniformly* on all members of any class of persons, places or things requiring legislation peculiar to itself in matters covered by the law. Laws are *general* and *uniform,* not because they operate on every person in the state, for they do not, but because they operate upon every person who is brought within the relations and circumstances provided for."

In Corpus Juris, vol. 59, § 309, p. 722: "When the Constitution so provides a law of a general nature must have a uniform operation, which requirement is satisfied if the statute applies uniformly within a class of persons based on a reasonable distinction, or objects of a natural class, and operating the same on all parts of the state under the same circumstances."

In the case of Festervand v. Laster, 15 La.App. 159, 130 So. 634, 638, it is held: "A provision requiring uniformity of legislation does not mean that all laws must embrace all persons, since a law is said to be general or uniform, not because it operates alike upon every person in the state, but because it operates alike upon every person in the state who is brought within the conditions and circumstances prescribed by the law."

In the case of Foucht et al. v. Hirni, County Auditor, 57 Cal.App. 685, 208 P. 362, 368, it was held: "The word 'uniform' in the Constitution does not mean *universal.* The section [section 11, Art. 1, of the Const.] intends simply that the effect of general laws shall be the same to and upon all persons who stand in the same relation to the law—that is, all the facts of whose cases are substantially the same. * * * A law which applies equally to all persons or things within a legitimate class does not violate the provision requiring laws of a general nature to have a uniform operation."

And in Hellman v. Shoulters, 114 Cal. 136, 44 P. 915, 918, 45 P. 1057, it is observed: "It has been uniformly held that a law is general which applies to all of a class, the classification being a proper one, and that the requirement of uniformity is satisfied if it applies to all of the class alike."

If the law meets every contingency when it arises and treats all contingencies of like character in like manner, it is uniform in its operation. If the law operates equally upon all the objects embraced within it, when they come within the circle or scope of its authority, the uniformity of operation contemplated by section 190 of the Constitution is attained. This conclusion seems to be sustained by a well-nigh unanimous holding of the courts of last resort, including the Supreme Court of the United States. Chicago, Burlington, etc., R. Co. v. Iowa, 94 U.S. 155, 24 L.Ed. 94.

But it is insisted that this court has heretofore reached a different conclusion, referring to the case of State ex rel. Austin v. Black, 224 Ala. 200, 139 So. 431, 434, in which it was observed: "The added words to section 190, Constitution of 1901, 'shall provide by law for the manner of holding elections and of ascertaining the result of the same,' to the provisions of the

former Constitution were in the nature of a constitutional definition or limitation upon the general provisions contained in section 5, article 8 of the Constitution of 1875. And thus were the words 'regulate and govern' defined by the makers of the Constitution as to the matter of substantive requirements for uniformity. State ex rel. Porter v. Crook, Judge, etc., 126 Ala. 600, 28 So. 745."

In the case of State ex rel. Austin v. Black, supra, this court only committed itself, in the respect here under consideration, to the proposition that the substantial requirements of laws governing, regulating, and holding elections and ascertainment of results should be uniform. The court did not, in anything said in that opinion, commit itself to what constituted uniformity or uniform operation. We are in full accord with the contention that the law governing and regulating elections should be uniform throughout the State, but we do not agree with the construction attempted to be placed upon the provision of the Constitution which requires uniformity. We are fully persuaded that the court, in the Austin Case, supra, intended that the word *uniform* should be given the meaning placed upon it in the almost unanimous holdings of the highest courts in the Union. We find nothing in the entire instrument which would justify this court in assuming that it was the intention of the framers of the Constitution that the term "uniform laws" should be given a meaning other or different from that given to it by the courts of last resort in the other States of the Union.

It is our conclusion that the contention that the Douglass Act violates section 190 is devoid of merit.

It is also contended that the act offends section 179 of our Constitution, which provides that: "All elections by the people shall be by ballot, and all elections by persons in a representative capacity shall be viva voce."

The purpose of this provision was, of course, to insure, as far as possible, absolute secrecy and the integrity of the ballot.

The question of the constitutionality of statutes authorizing the use of voting machines has been before the highest courts in many States of the Union. In all jurisdictions in which this question has arisen, Massachusetts excepted, the courts have, with unanimity, held that such stat-

utes are constitutional and that they are not in contravention of constitutional provisions requiring that all votes shall be by ballot, the courts being of the opinion that word "ballot" was not employed in its literal sense, but only for the purpose of designating a method of conducting elections which will insure secrecy and the integrity of the ballot. Lynch v. Malley, 1905, 215 Ill. 574, 74 N.E. 723, 2 Ann.Cas. 837; People ex rel. Hull v. Taylor, 1912, 257 Ill. 192, 100 N.E. 534; Spickerman v. Goddard, 1914, 182 Ind. 523, 107 N.E. 2, L.R. A.1915C, 513; United States Standard Voting Mach. Co. v. Hobson, 1906, 132 Iowa 38, 109 N.W. 458, 7 L.R.A.,N.S., 512, 119 Am.St.Rep. 539, 10 Ann.Cas. 972; Detroit v. Inspectors of Election, 1905, 139 Mich. 548, 102 N.W. 1029, 69 L.R.A. 184, 111 Am.St.Rep. 430, 5 Ann.Cas. 861; Henderson v. Election Com'rs, 1910, 160 Mich. 36, 124 N.W. 1105; Elwell v. Comstock, 1906, 99 Minn. 261, 109 N.W. 113, 698, 7 L.R.A.,N.S., 621, 9 Ann.Cas. 270; State ex rel. Fenner v. Keating, 1917, 53 Mont. 371, 163 P. 1156; People ex rel. Deister v. Wintermute, 1909, 194 N.Y. 99, 86 N.E. 818, reversing 1908, 127 App.Div. 933, 111 N.Y.S. 1135; Gerling v. Nichols, 1924, 123 Misc. 811, 206 N.Y.S. 191; Lynn v. Nichols, 1924, 122 Misc. 170, 202 N.Y.S. 401, affirmed in 1924, 210 App.Div. 812, 205 N.Y.S. 935; State ex rel. Automatic Registering Machine Co. v. Green, 121 Ohio St. 301, 168 N.E. 131, 66 A.L.R. 849, overruling State ex rel. Karlinger v. Deputy State Sup'rs, 1909, 80 Ohio St. 471, 89 N. E. 33, 24 L.R.A.,N.S., 188; State ex rel. Empire Voting Mach. Co. v. Carroll, 1914, 78 Wash. 83, 138 P. 306.

In Ruling Case Law, vol. 9, p. 1062, § 78, the author states the rule of the decisions as follows: "It is a general rule that a constitutional requirement that the vote shall be by ballot, does not invalidate a statute providing for the use of voting machines in elections—the term ballot not being employed in its literal sense but only for the purpose of designating a method of conducting elections which will insure secrecy."

In Corpus Juris, vol. 20, § 213, p. 176, it is stated: "Such stautes have often been attacked as violating the constitutional guarantee of secrecy in voting, but the authorities generally have held that a vote cast through the medium of a voting machine *is a vote by ballot;* and that the statutes providing for this method of vot-

ing are not unconstitutional as violating a right of an elector to vote a *secret ballot.*" (Italics supplied.)

There is nothing in our case of Ex parte Bud Owens, supra, which is in conflict with the above holding. That case, in so far as any question involved in this case, dealt with an insistence on the part of the petitioner that the numbering of ballots invalidated the election, and it was decided adversely to him.

We are of the opinion that the contention that the Douglass Act violates section 179 of the Constitution is without merit.

We have considered all other constitutional objections urged against the constitutionality of the act, and in our opinion they are without merit.

Constitutions, under our American system of government, were made to serve practical purposes, to preserve to the people the great fundamentals of their government, and those rights thereunder which the framers deemed so essential that they were unwilling to leave their preservation to the whims or caprice of every succeeding Legislature. As to such matters, permanency and stability were deemed essential, but we are unable to say, with an abiding conviction, that the makers of our Constitution deemed it an essential of government that a voter's choice at the polls should be registered by the use of a pen or pencil in making an X mark, rather than by pulling a lever on a mechanical device. After all, the purpose of the ballot is to secure secrecy, which is just as safely guarded by the voting machine as by the present method. There is no magic in a pen or pencil.

In the opinion of the writer the Douglass Act, as for any grounds here argued, does not violate any provision of the State Constitution, and its validity should be sustained.

I, therefore, register this my dissent. I am authorized by Mr. Justice GARDNER and Mr. Justice FOSTER to say that they concur in the foregoing dissent.

### Upon Rehearing.

### ANDERSON, Chief Justice.

■ Counsel for movant urge that we are in error in treating too seriously the opinion in the case of State ex rel. Austin v. Black, 224 Ala. 200, 139 So. 431, 434— that what was there said as to section 190 of the Constitution was dictum and is un-

sound, especially as to the meaning and purpose as to the added words appearing in said section, "shall provide by law for the manner of holding elections and of ascertaining the result of the same."

As this provision stood in the Constitution of 1875, this court had, in effect, held that the uniformity there required did not apply to elections for the removal of county sites, State ex rel. Porter v. Crook;. Judge &c., 126 Ala. 600, 28 So. 745, and that uniformity was not required as to the building or structures in which elections were held, Lovejoy v. Beeson, 121 Ala. 605, 25 So. 599, and no doubt would have held that uniformity was not required as to the hours for opening and closing the polls, owing to the density of population and voters, these being minor details. So when the framers of the Constitution of 1901 convened for the paramount purpose of dealing with suffrage and elections, spending weeks and months considering this serious subject, and being confronted with section 190 as it appeared in the Constitution of 1875, also being aware of the fact that it had been construed as not requiring uniformity as to certain minor details, inserted therein the above quoted words as being of substantive requirement, thus, in effect, emphasizing and accentuating that "uniformity" should apply to the "manner of holding elections and of ascertaining the result of the same." Had they meant that uniformity should not apply to the manner of holding elections and ascertaining the result of same, it would have been much plainer and simpler to have excepted same.

Reverting to the case of State ex rel. Austin v. Black, supra, it is possible that the decision did not hinge on an interpretation of these added words, but in the opinion in said case appears: "The amended information assails the act as being violative of section 190 of the Constitution, as to regulation and government of election laws throughout the state, and as to providing for the manner of holding elections, and of the ascertainment of the result of the same." The opinion, then in response to this contention, naturally and very properly proceeded to discuss the meaning of the section and to point out that uniformity applied only to substantive matter and not minor details, and then points out that the added words were not intended as an exception but were in the nature of a constitutional definition, that these added words were a matter of sub-

stantive requirement for uniformity. Therefore, this holding, whether dictum or not, was a reasonable and sound one and is now adopted and followed as a proper interpretation of the added words to section 190.

We, of course, have not held that uniformity must be so technical or literal as to require all ballots to be marked with pen and ink instead of a pencil, or that all marks should be of the same color, or that it could not be made with a stamp or other device, or that the voting machine can not be used throughout the state if so constructed and operated as to meet all constitutional requirements, but we do hold that holding the election and the ascertainment of the result in one or a few counties in the state, as authorized by the Douglass Act, permits an entirely different system for holding elections in some counties from that prevailing in others and is repugnant to section 190 of the Constitution of 1901.

We still think that counsel, as well as our dissenting brothers, have confused the holding of this and other courts in construing section 110 defining general laws and have erroneously applied those cases to our section 190.

 It is urged for the first time, upon rehearing, that section 190 applies only to legally required general elections and not to primary elections for party nominations and that the Douglass Act should be upheld as to primary elections. True, primary elections are not compulsory and the holding of same is left to the discretion of the governing authorities of the respective political parties, but section 190 provides that when adopted or ordered they shall not be "inconsistent with this article." Therefore, whether primary elections are or are not governed by section 190, we need not decide, as such holding by us would be contrary to both the letter and spirit of the Douglass Act which deals throughout with all elections, and to hold that it applies only to primary elections would be equivalent to adopting an act totally different from the one enacted by the legislature.

The application for rehearing is overruled.

THOMAS, BOULDIN, and BROWN, JJ., concur.

GARDNER, FOSTER, and KNIGHT, JJ., dissent.